**Dr. Emory M. GHANA, Appellant,**

v.

**J.T. HOLLAND.**

No. 97–7043.

United States Court of Appeals, Third Circuit.

Argued: May 23, 2000.

Filed: Aug. 29, 2000.

Stephen M. Latimer, (Argued), Loughlin & Latimer, Hackensack, NJ, Attorney for Appellant.

David M. Barasch, United States Attorney, David W. Ogden, Acting Assistant Attorney General, Anne K. Fiorenza, Office of United States Attorney, Harrisburg, PA, Barbara L. Herwig, Peter R. Maier, (Argued), United States Department of Justice Civil Division, Appellate Staff, Washington, DC, Attorneys for Appellee.

Before SLOVITER and MANSMANN, Circuit Judges, and WARD,* District Judge.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

Appellant Emory M. Ghana filed a *Bivens* action against the warden of the federal prison in which he was then housed claiming the warden had violated his First Amendment rights. The District Court dismissed the suit for failure to exhaust administrative remedies. This appeal requires us to decide whether the exhaustion requirement contained in § 803 of the Prison Litigation Reform Act ("PLRA") and codified at 42 U.S.C. § 1997e(a) applies to cases pending on the date of enactment of the statute.

---

* Hon. Robert J. Ward, United States District Court for the Southern District of New York, sitting by designation.

## I.

### FACTS AND PROCEDURE

Ghana was convicted of murder in New Jersey in 1972 and was imprisoned in a state facility. In April of 1991 he was transferred to the U.S. Bureau of Prisons ("BOP") Federal Correctional Institute at Allenwood ("FCI Allenwood") pursuant to the Interstate Corrections Compact. Defendant J.T. Holland was the warden of FCI Allenwood during the period relevant to this appeal.

The facts of this case can be summarized briefly. Because this is an appeal from the dismissal of Ghana's complaint, we accept them as true. According to his complaint, Ghana is "a believer in Afrikan Hebrewism, which is associated with the tenets of Rastafarianism." App. at 5. Since his incarceration in 1972 he has participated in religious activities and observed the dietary restrictions of his faith. His lawsuit alleges that two actions taken against him at Allenwood violated his right to free exercise of his religion.

First, Ghana challenges his removal from the Common Fare ("CF") diet the BOP makes available to prisoners with special religious dietary needs. Ghana applied for and was permitted to participate in the CF program in September 1995. He was removed in December of that year, apparently because a staff member observed him eating food that was not part of the CF diet. Ghana alleges that BOP regulations permit participants in the CF

diet to consume certain items from the "main line." App. at 3.

Second, Ghana alleges that while he was in administrative segregation from October 4, 1995 until November 16, 1995, he was denied access to a cassette player and Rastafarian religious cassettes despite the fact that "[p]ortable radios, and headphones are permitted in SHU [the Special Housing Unit] for prisoners' use." App. at 5.

BOP regulations provide "a process through which inmates may seek formal review of an issue which relates to any aspect of their confinement." 28 C.F.R. § 542.10. Prior to filing suit, Ghana pursued the first two stages of the BOP grievance procedure for each incident. He first filed informal complaints with the staff at FCI Allenwood, which were denied. *See* 28 C.F.R. § 542.13(a) (inmate with a grievance shall first present issue informally to prison staff). He then appealed to Warden Holland by filing Requests for Administrative Remedy. Holland denied both Requests on January 22, 1996.

An inmate dissatisfied with the warden's disposition of his Request for Administrative Remedy may appeal within 20 days to the BOP's Regional Director, *see* 28 C.F.R. § 542.15(a), who has 30 calendar days to respond, *see* 28 C.F.R. § 542.18, and may appeal within 30 days from the Regional Director's decision to the BOP's General Counsel, *see* 28 C.F.R. § 542.15(a), who must respond within 40 days, *see* 28 C.F.R. § 542.18. It is undisputed that Ghana took neither of these steps.[1]

---

1. Ghana does not allege that he was unaware of the BOP's administrative process or the exhaustion requirement. We assume that the process was not new to him, as he is no stranger to § 1983 and *Bivens* litigation. In addition to filing seven other lawsuits against various defendants, including Holland, between September 20, 1995 and January 22, 1996, Ghana has filed a plenitude of lawsuits while incarcerated. *See, e.g., Muhammad v. Fauver*, No. CIV. A. 79–3121(JCL), 1989 WL 71811, at *8 (D.N.J. June 28, 1989) (detailing the tortuous history of lawsuit brought by Ghana, stating that "the confusion and delay that has unfortunately characterized much of

the background in this case is directly attributable to [Ghana's] conduct," and noting that Ghana had filed at least 38 actions in the District of New Jersey between 1976 and 1983); *see also Ghana v. Story*, No. 96–3060, 1996 WL 566182, at *2 (10th Cir. Oct.4, 1996) (listing numerous recent actions in which Ghana attempted "to evade his responsibilities as a plaintiff").

Along these lines, we note that although Ghana alleges that he has consistently practiced Afrikan Hebrewism since 1972, in cases arising after that date he has sometimes maintained that he is Jewish. *See Muham-*

Instead, on February 2, 1996, he filed suit pro se in the United States District Court for the Middle District of Pennsylvania pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The complaint named Holland in both his individual and official capacities as the only defendant. Although the complaint purported to state claims under the First, Eighth, and Fourteenth Amendments, Ghana's essential allegation is that his removal from the CF program and the denial of religious cassettes while he was in the SHU violated the Free Exercise clause of the First Amendment. He also alleged, but subsequently abandoned, a claim under the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb *et seq.* Ghana sought $100,000 in compensatory and $200,000 in punitive damages. He also sought a wide range of injunctive and declaratory relief, the precise nature of which is not relevant here.

On May 7, 1996, Holland filed a motion to dismiss and a separate motion for summary judgment, asserting that Ghana had failed to exhaust the available administrative process. Holland subsequently filed a motion to stay discovery pending the court's resolution of the dispositive motions. The District Court held that the summary judgment motion was premature and dismissed it without prejudice but stayed discovery while it considered the motion to dismiss.

By order and opinion dated November 27, 1996, the court dismissed Ghana's claims without prejudice, holding that Ghana had failed to exhaust his administrative remedies as required by the PLRA, 42 U.S.C. § 1997e(a). Although the PLRA became effective on April 26, 1996, *see Whitley v. Hunt*, 158 F.3d 882, 885 (5th Cir.1998), and Ghana had filed his complaint before that date, the court held that § 1997e(a), "[a]s a procedural and/or jurisdictional rule, ... does not raise concerns about retroactivity and may be applied to litigation pending on the date of the statutory enactment." *Ghana v. Holland*, No. 1:CV–96–0191, slip op. at 4 n. 5 (M.D.Pa. Nov. 27, 1996) (herein, "November 27 order"). In the alternative, the court held that even if the PLRA did not apply to Ghana's complaint, the law prior to the enactment of § 1997e(a) likewise required exhaustion of administrative remedies unless "money damages were the only relief requested." *Id.* at 4. Because Ghana's complaint requested declaratory and injunctive relief in addition to money damages, the court held that pre-PLRA law also required dismissal.

On November 25, 1996, two days before the court issued this order, Ghana filed a motion for leave to file an amended complaint in which he dropped his requests for injunctive and declaratory relief. Ghana thus sought only damages in the proposed amended complaint. The court, however, did not receive the motion until November 28 and therefore did not rule on it in the November 27 order.

On December 4, 1996, six days after the court's November 27 order granting Holland's motion to dismiss, Ghana filed a third motion, this one seeking reconsideration of the November 27 dismissal order. In the motion to reconsider, Ghana again argued that he should be allowed to file an amended complaint seeking only damages. Ghana explained that he sought leave to amend "to eliminate cause for dismissal of complaint concerning failure to exhaust administrative remedies." App. at 14. Both the motion to amend the complaint and the motion to reconsider were filed after the April 26, 1996 effective date of the PLRA.

The court denied both motions. On December 10, 1996, the court denied the motion for leave to amend, holding that "pursuant to the language of § 1997e(a), [Ghana] is still required to exhaust." *Ghana v. Holland*, No. 1:CV–96–0191, slip

---

*mad*, 1989 WL 71811, at *4; *Ghana v. Fauver*, No. CIV88–2241 (GEB), 1988 WL 82227, at

*1 (D.N.J. Aug. 4, 1988), *vacated*, 877 F.2d 54 (3d Cir.1989).

op. at 3, (M.D.Pa. Dec. 10, 1996) (herein, "December 10 order"). On December 17, 1996, the court denied the motion to reconsider for the same reason it had denied the motion to amend—that any amended complaint would run afoul of § 1997e(a)'s exhaustion requirement.

Ghana, still acting pro se, then filed a notice of appeal challenging the December 17, 1996 order denying reconsideration. On April 15, 1997, this court issued an order procedurally terminating Ghana's appeal for failure to pay the docketing fee. Ghana then filed a motion that was construed as seeking to re-open the appeal and one seeking to proceed *in forma pauperis*. These motions were granted and counsel was appointed to represent Ghana in the appeal. At some point after the appeal was filed, Ghana was transferred back to the custody of New Jersey and is incarcerated once again in a state facility.

## II.

## DISCUSSION

### A.

### Jurisdiction

■ Before we can reach the merits, we must address our jurisdiction and the scope of our review. Ghana's notice of appeal stated that he was challenging the District Court's December 17, 1996 order denying reconsideration. He did not state his intent to appeal either the November 27 order dismissing the complaint or the December 10 order denying leave to amend. However, we construe his pro se notice of appeal liberally to cover "unspecified prior orders [that] . . . are related to the specified order that was appealed from." *Tabron v. Grace*, 6 F.3d 147, 153 n. 2 (3d Cir.1993). We conclude, and the government does not contest, that the notice of appeal was sufficient to confer jurisdiction over the unspecified orders.

■ However, Ghana has waived any argument that the District Court erred in denying leave to amend. In his opening brief in this court Ghana was represented by counsel and never raised this issue. In fact, he did not discuss the amended complaint until his reply brief, and even there he did not argue that the District Court abused its discretion in denying leave to amend. Instead, he argued that because the amended complaint (which was never accepted) related back to the original complaint under Fed.R.Civ.P. 15, he "no longer seeks injunctive relief [and] he is not required to exhaust." Appellant's Reply Br. at 8.

Even assuming this argument was sufficient to challenge the District Court's denial of leave to amend, it came one brief too late. *See Republic of the Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 71 n. 5 (3d Cir.1994). Rule 28(a)(5) of the Federal Rules of Appellate Procedure and our Local Appellate Rule 28.1(a) require appellants to set forth the issues raised on appeal and to present an argument in support of those issues in their opening brief. *See also Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir.1993). Ghana did not do so, and "[i]t is well settled that if an appellant fails to comply with these requirements on a particular issue, [he] . . . normally has abandoned and waived that issue on appeal." *Id.*

■ Finally, we note that the District Court dismissed Ghana's complaint without prejudice. Ordinarily, such an order is not appealable, but a prisoner whose complaint has been dismissed without prejudice for failure to exhaust may nonetheless appeal as though from a final order "when he declares his intention to stand on his complaint or when he cannot cure the defect in his complaint." *Booth v. Churner*, 206 F.3d 289, 293 n. 3 (3d Cir.2000). We have stated that an appellant who does not attempt to avail himself of the administrative process, but who instead files an appeal raising the argument that exhaustion would be futile, "effectively stands on his original complaint" and that in such cases we may exercise jurisdiction over an order

dismissing a complaint without prejudice. *Nyhuis v. Reno,* 204 F.3d 65, 68 n. 2 (3d Cir.2000). Here, Ghana argues that exhaustion is futile because the BOP administrative process cannot provide him with monetary relief, and we may therefore exercise jurisdiction over his appeal.

## B.

### Retroactivity of § 1997e(a)

In his original complaint, Ghana sought declaratory and injunctive as well as monetary relief to remedy Holland's alleged constitutional violations. The District Court dismissed the complaint for two reasons, and we address them in turn. First, the court held that the complaint was barred by the administrative exhaustion provision contained in § 803 of the PLRA, codified at 42 U.S.C. § 1997e(a), notwithstanding that Ghana had filed his complaint almost three months before the effective date of the PLRA. We review this issue of law *de novo. See Prisco v. Talty,* 993 F.2d 21, 24 (3d Cir.1993).

The PLRA was "passed to reduce frivolous prisoner lawsuits and to reduce the intervention of federal courts into the management of the nation's prison systems." *Freeman v. Francis,* 196 F.3d 641, 644 (6th Cir.1999); *see also Wyatt v. Leonard,* 193 F.3d 876, 878 (6th Cir.1999) ("A purpose of the Act was to insure that prisons have notice of complaints and are given the opportunity to respond to prisoner complaints, particularly legitimate complaints, so that such injuries are prevented in the future."). To that end, Congress amended 42 U.S.C. § 1997e, which prior to the PLRA had "imposed a limited and discretionary exhaustion requirement applicable to § 1983 claims brought by state prisoners only." *Whitley v. Hunt,* 158 F.3d 882, 885 (5th Cir.1998).

Amended § 1997e(a) provides:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).[2]

■ We have held that this section requires all prisoners, state and federal, to exhaust administrative remedies "whether or not they provide the inmate-plaintiff with the relief he says he desires in his federal action." *Nyhuis,* 204 F.3d at 67. Seeking to avoid this rule, Ghana contends Congress intended § 1997e(a) to apply only to actions filed after the PLRA's effective date. The government concedes that "[a]s a general matter ... Congress did not intend section 1997e(a) to apply to actions brought before enactment of the PLRA." United States Br. at 23. This court has not addressed the retroactivity of the PLRA's exhaustion requirement.

■ Our analysis of whether § 1997e(a) applies to pending cases is governed by the Supreme Court's decision in *Landgraf v. USI Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), as elaborated by *Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and

---

2. Formerly, § 1997e provided:

  (a) Applicability of administrative remedies

  (1) Subject to the provisions of paragraph (2), in any action brought pursuant to section 1983 of this title by an adult convicted of a crime confined in any jail, prison, or other correctional facility, the court shall, if the court believes that such a requirement would be appropriate and in the interests of justice, continue such case for a period of not to exceed 180 days in order to require exhaustion of such plain, speedy, and effective administrative remedies as are available.

  (2) The exhaustion of administrative remedies under paragraph (1) may not be required unless the Attorney General has certified or the court has determined that such administrative remedies are in substantial compliance with the minimum acceptable standards promulgated under subsection (b) of this section or are otherwise fair and effective.

42 U.S.C. § 1997e(a) (1994).

*Martin v. Hadix,* 527 U.S. 343, 119 S.Ct. 1998, 144 L.Ed.2d 347 (1999). In determining whether a new federal statute should be applied to pending cases, we first ask whether "Congress has expressly prescribed the statute's proper reach." *Landgraf,* 511 U.S. at 280, 114 S.Ct. 1483. If it has, "we follow Congress' express prescription and apply the statute accordingly" unless doing so would violate the Constitution. *Mathews v. Kidder, Peabody & Co., Inc.,* 161 F.3d 156, 160 & n. 4 (3d Cir.1998).

█ If Congress has not expressly mandated the temporal reach of the statute, we "examine [the] statute under normal rules of statutory construction for evidence of congressional intent to apply the statute prospectively only." *Id.* at 162; *see also Lindh,* 521 U.S. at 326, 117 S.Ct. 2059. If no such intent is apparent, we ask whether applying the statute to the conduct at issue would have a retroactive effect by "impair[ing] rights a party possessed when he acted, increas[ing] a party's liability for past conduct, or impos[ing] new duties with respect to transactions already completed." *Landgraf,* 511 U.S. at 280, 114 S.Ct. 1483. If the statute has a retroactive effect, the traditional presumption against retroactive application "teaches that [the statute] does not govern absent clear congressional intent favoring such a result." *Id.*; *see also In re Minarik,* 166 F.3d 591, 596 (3d Cir.1999).[3]

Application of these rules leads us to a different conclusion than that reached by the District Court here. As instructed by *Landgraf,* we look first to whether Congress has expressly prescribed the reach of the statute. Section 1997e(a) contains no express direction to apply the exhaus-

tion requirement to pending cases. *See Martin,* 527 U.S. at 355, 119 S.Ct. 1998 (stating that § 803 of the PLRA, which included the exhaustion requirement now codified at § 1997e(a), "contains no explicit directive that it should apply to pending cases").

Indeed, every court of appeals to have considered the issue has concluded that the express language of § 1997e(a), which provides that "no action shall be brought" until the prisoner exhausts administrative remedies, demonstrates Congress's intent that the exhaustion requirement apply only to new actions. *See Salahuddin v. Mead,* 174 F.3d 271, 276 (2d Cir.1999); *Bishop v. Lewis,* 155 F.3d 1094, 1095 (9th Cir.1998); *Wright v. Morris,* 111 F.3d 414, 423 (6th Cir.1997).

Significantly, § 1997e(a) does not use language—such as "no action shall be maintained"—that might plausibly be interpreted to apply to pending cases. *See Salahuddin,* 174 F.3d at 274. Instead, a plain reading of the language "shall be brought" makes clear "that it applies only to actions that have yet to be brought—not to ones that have already been filed." *Bishop,* 155 F.3d at 1095.

This textual analysis is consistent with the reasoning underlying our decision in *Gibbs v. Ryan,* 160 F.3d 160 (3d Cir.1998), where we addressed the retroactivity of § 1915(g) of the PLRA. That section applies to prisoners proceeding *in forma pauperis* and provides that "[i]n no event shall a prisoner bring a civil action" if he has brought three prior frivolous actions. 28 U.S.C. § 1915(g). Section 1915(g) uses language ("shall ... bring") that is nearly identical to § 1997e(a) ("shall be brought"). In *Gibbs,* we held that § 1915(g) does not

---

3. We have previously recognized that there are "three categories in which 'application of new statutes passed after the events in suit is unquestionably proper' even 'absent specific legislative authorization.'" *In re Minarik,* 166 F.3d at 596 (quoting *Landgraf,* 511 U.S. at 273, 114 S.Ct. 1483). Those are: (1) "when the intervening statute authorizes or affects the propriety of prospective relief," (2)

when the statute "confer[s] or oust[s] jurisdiction," and (3) when the statute makes "[c]hanges in procedural rules." *Id.* (quotations omitted). However, "the mere fact that a new rule is procedural does not mean that it applies to every pending case." *Landgraf,* 511 U.S. at 275 n. 29, 114 S.Ct. 1483; *see also Mathews,* 161 F.3d at 161 n. 8.

authorize the district court to revoke *in forma pauperis* status granted to a prisoner prior to enactment of the PLRA. We explained, "Congress clearly limited the reach of § 1915(g) to 'bringing' a civil action.... In the context of filing a civil action, 'bring' ordinarily refers to the 'initiation of legal proceedings in a suit.'" *Gibbs*, 160 F.3d at 162 (quoting Black's Law Dictionary 192 (6th ed. 1990)). We concluded that "[n]othing in the text of the statute leads us to conclude that Congress intended the 'three strikes' provision to apply to actions that were 'pending' as well as actions that were 'brought' under the PLRA." *Id.* at 163; *see also Abdul-Wadood v. Nathan*, 91 F.3d 1023, 1025 (7th Cir.1996) ("Section 1915(g) governs bringing new actions or filing new appeals ... rather than the disposition of existing cases."); *Craig v. Eberly*, 164 F.3d 490, 494–95 (10th Cir.1998) (holding that § 1997e(e), which provides that "[n]o federal civil action *may be brought* ... for the mental or emotional injury suffered while in custody without a prior showing of physical injury," applies prospectively only).

Though not raised by the parties, we consider whether the Supreme Court's recent decision in *Martin* affects the reasoning of the cases we have cited. In *Martin*, the Court addressed the retroactivity of another provision contained in § 803 of the PLRA. That provision, codified at 42 U.S.C. § 1997e(d)(3), governs the award of attorney's fees in prisoner civil rights cases and provides:

> No award of attorney's fees in [any action brought by a prisoner who is confined to any jail, prison, or other correctional facility] shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of Title 18....

42 U.S.C. § 1997e(d)(3) (incorporating definition from 42 U.S.C. § 1997e(d)(1)).

In *Martin*, the Court held that § 1997e(d)(3) limits attorney's fees with respect to post-judgment monitoring services performed after the PLRA's effective date but does not limit fees for such services performed prior to that date. *See Martin*, 527 U.S. at 347, 119 S.Ct. 1998. This conclusion followed from the Court's holding that applying § 1997e(d)(3) to services performed prior to the PLRA's effective date would have a retroactive effect. Because there was no clear congressional intent to apply § 1997e(d)(3) retroactively, the Court declined to apply the statute in that manner. *See id.* at 361–62, 119 S.Ct. 1998.

Of course, the Court would not have reached the issue whether § 1997e(d)(3) has a retroactive effect if Congress had expressly provided for prospective application of that section or if other rules of statutory construction "remove[d] even the possibility of retroactivity." *Lindh*, 521 U.S. at 326, 117 S.Ct. 2059. In fact, the Court specifically rejected the argument that § 1997e(d)(3) "reveals congressional intent that the fees provisions apply *prospectively* only." *Martin*, 527 U.S. at 355, 119 S.Ct. 1998.

Although there is some similarity between the language in § 1997e(d)(3)—"any action brought by a prisoner who is confined"—and the language in § 1997e(a) at issue here—"[n]o action shall be brought"—we cannot read *Martin* to preclude our holding that § 1997e(a) expressly applies only to actions brought after the PLRA's effective date. As the court held in *Salahuddin*, the term "shall" in § 1997e(a), which is absent from § 1997e(d)(3), "is an imperative that speaks to future conduct." 174 F.3d at 274. We agree with the Second Circuit that giving the phrase "no action shall be brought" its most natural construction, "it is a command that governs the circumstances in which an action yet to be initiated may 'be brought.'" *Salahuddin*, 174 F.3d at 274–75.

We therefore conclude that § 1997e(a) of the PLRA does not apply to cases pending on the date of enactment and we reject

the District Court's first basis for dismissing Ghana's complaint.

### C.

### Ghana's Complaint was Properly Dismissed under pre-PLRA Law

■ We agree, however, with the District Court's alternative basis for dismissing Ghana's original complaint, which was that he was required to exhaust administrative remedies under the law in effect prior to the passage of the PLRA. At that time, it was well established in this circuit and others that federal prisoners pursuing "mixed claims"—those seeking both damages and injunctive relief—had to exhaust administrative remedies. *See, e.g., Veteto v. Miller*, 794 F.2d 98, 100 (3d Cir.1986); *Irwin v. Hawk*, 40 F.3d 347, 348–49 (11th Cir.1994) (per curiam); *Arvie v. Stalder*, 53 F.3d 702, 705–06 (5th Cir.1995) (approving *Irwin* in a § 1983 suit governed by § 1997e). However, in some circuits, including this one, federal prisoners seeking only money damages were not required to exhaust, *see Muhammad v. Carlson*, 739 F.2d 122, 125 (3d Cir.1984), although other circuits disagreed, *see Hessbrook v. Lennon*, 777 F.2d 999, 1001 (5th Cir.1985).

In *McCarthy v. Madigan*, 503 U.S. 140, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992), the Supreme Court resolved the dispute and held that federal prisoners seeking only monetary damages need not exhaust administrative remedies. In reaching this holding (which, we emphasize, is no longer applicable to prisoners bringing claims governed by the PLRA, *see Nyhuis*, 204 F.3d at 67), the Court emphasized the general requirement that "parties exhaust prescribed administrative remedies before seeking relief from the federal courts." *McCarthy*, 503 U.S. at 144–45, 112 S.Ct.

1081. Exhaustion, the Court stated, "protect[s] administrative agency authority and promot[es] judicial efficiency." *Id.* at 144, 112 S.Ct. 1081. However, because there was then no statutory exhaustion requirement for federal prisoners, whether exhaustion should be required was a matter of "sound judicial discretion." *Id.* at 144, 112 S.Ct. 1081. In exercising that discretion, federal courts were directed to "balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion." *Id.* at 146, 112 S.Ct. 1081.

After balancing the interests in *McCarthy*, the Court concluded that exhaustion was not required because the BOP's grievance procedure imposed "short, successive filing deadlines" and did "not authorize an award of monetary damages," the only relief McCarthy requested. *Id.* at 152, 112 S.Ct. 1081. The Court noted that were injunctive relief also sought, the short filing deadlines would pose less difficulty because the limitations period would be triggered anew by ongoing conduct, and the grievance procedure probably would be capable of producing the type of corrective action desired. *See id.* at 153 n. 5, 112 S.Ct. 1081.

Less than a month after *McCarthy* was decided we reaffirmed the rule that prisoners with mixed claims were required to exhaust administrative remedies. *See Young v. Quinlan*, 960 F.2d 351, 356 n. 8 (3d Cir.1992), *superseded by* § 1997e(a) *as stated in Nyhuis*, 204 F.3d at 71 n. 7. This exhaustion requirement remained the law when Ghana filed his original complaint and, because he sought injunctive and declaratory as well as monetary relief, the District Court properly dismissed it under pre-PLRA law.[4]

---

4. We reject Ghana's argument that he should have been permitted to "proceed with his damage claim while simultaneously exhausting his administrative remedies for injunctive relief." Appellant's Br. at 22. In the first place, Ghana does not appear to have pre-

sented this argument to the District Court. Moreover, our pre-PLRA cases involving exhaustion by federal prisoners have stated that "[i]f ... the administrative remedy has not been exhausted, the complaint should be dis-

## D.

### Ghana's Transfer to a State Facility

■ Ghana also asserts that his requests for injunctive and declaratory relief have become moot because he was transferred from FCI Allenwood to state prison after filing this appeal. *See, e.g., Smith v. Hundley*, 190 F.3d 852, 855 (8th Cir.1999) (transfer of prisoner to another facility prior to trial mooted claims for injunctive and declaratory relief). Ghana argues that his only remaining claim is one for monetary damages and that he therefore falls under the rule announced in *McCarthy* that federal prisoners seeking only monetary damages need not exhaust their administrative remedies.

We disagree. In the first place, we emphasize that Ghana's appeal is not moot in the constitutional sense; that is, Ghana's transfer is not an event during the pendency of the appeal that "makes it impossible for the court to grant 'any effectual relief whatever.'" *Church of Scientology v. United States*, 506 U.S. 9, 12, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992) (quoting *Mills v. Green*, 159 U.S. 651, 653, 16 S.Ct. 132, 40 L.Ed. 293 (1895)). This court retains jurisdiction to consider whether the District Court properly dismissed Ghana's complaint for failure to exhaust administrative remedies.

Moreover, the issues before us on appeal relate to the propriety of the District Court's order dismissing Ghana's complaint. We fail to see how the mooting of Ghana's requests for injunctive and declaratory relief, which occurred after Ghana's appeal was filed, provides a basis for reversal. Ghana does not explain how his subsequent transfer to another facility requires us to reverse an order of the District Court that was clearly correct when rendered.

The only support Ghana offers for his position is our decision in *Young v. Quinlan*, 960 F.2d 351 (3d Cir.1992), superseded by § 1997e(a) as stated in *Nyhuis*, 204 F.3d at 71 n. 7. In *Young*, a prisoner appealed the dismissal of his claims and the grant of summary judgment in favor of various prison officials who allegedly failed to protect him from other inmates. *Young* was a pre-PLRA case, and the plaintiff sought both injunctive relief and damages without exhausting administrative remedies. Nonetheless, the district court reached the merits, dismissing the claims against some defendants and granting summary judgment in favor of others.

■ On appeal, we reversed in part, but before addressing the district court's order we stated in a footnote that "[plaintiff's] request for injunctive relief has become moot since he no longer is incarcerated. Accordingly, we will not now require [plaintiff] to exhaust administrative remedies." *Id.* at 356 n. 8. The opinion in *Young* did not make clear whether the plaintiff had been released from prison while his case was pending before the district court or, as here, during the pendency of his appeal, nor is it clear that the issue of exhaustion had been briefed or raised by the parties or discussed by the district court. But even if the plaintiff's request for injunctive relief had become moot while his case was on appeal, our disposition in *Young* did not rest on mootness but on our disagreement with the court's resolution of the issues that were before it. Nothing in *Young* suggests that we viewed events that occurred after the district court's or-

---

missed without prejudice to its reinstatement [after exhaustion]." *Veteto*, 794 F.2d at 100.

We likewise reject Ghana's argument that he substantially complied with the BOP's administrative procedure, another issue he raises for the first time on appeal. Ghana does not dispute that he failed to appeal Holland's

disposition of his Requests for Administrative Remedy, and he offers no excuse for this failure. Instead, he argues that because he is no longer in federal custody his claims for injunctive relief are moot. As we discuss *infra*, this argument is unpersuasive.

der as a basis for reversal.[5] We therefore decline to reverse the District Court's order dismissing Ghana's complaint because of Ghana's subsequent transfer to another facility.

## III.

## CONCLUSION

For the foregoing reasons, we will affirm the order of the District Court dismissing Ghana's complaint for failure to exhaust administrative remedies.

---

**5.** Our willingness in *Young* to disregard the plaintiff's failure to exhaust reflects the discretionary nature of the exhaustion requirement before the PLRA. For state prisoners, § 1997e "provided only that a federal district court had the discretion to require exhaustion when such a requirement would be appropriate and in the interests of justice." *Wendell v. Asher*, 162 F.3d 887, 890 (5th Cir.1998) (quotation omitted). For federal prisoners like the plaintiff in *Young*, the Supreme Court emphasized that "[i]t is difficult to see why a stricter rule of exhaustion than Congress itself has required in the state prison context should apply." *McCarthy*, 503 U.S. at 150–51, 112 S.Ct. 1081. It is clear, therefore, that before the enactment of the PLRA whether to require exhaustion of administrative remedies was a matter committed to the discretion of the courts. *See id.* at 144, 112 S.Ct. 1081 (exhaustion is a matter of "sound judicial discretion"). Consequently, *Young* did not purport to lay down a rule forgiving exhaustion whenever the plaintiff's request for injunctive relief became moot.