**Harinder SINGH, Petitioner,**

v.

**John ASHCROFT, Attorney General of the United States, Respondent.**

No. 02–3759.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Sept. 18, 2003.

Decided Nov. 7, 2003.

Daniel M. Pell, York, PA, for Petitioner.

David V. Bernal, Douglas E. Ginsburg, John M. McAdams, Jr., Barry J. Pettinato, United States Department of Justice, Washington, DC, for Respondent.

Before McKEE and SMITH, Circuit Judges, and SCHILLER, District Judge.[1]

## OPINION

McKEE, Circuit Judge.

Harinder Singh argues the Board of Immigration Appeals ("BIA") erred by affirming the Immigration Judge's order denying his application for asylum and withholding of removal. Singh was ordered removed in accordance with 241(b)(1)(A) of the Immigration and Nationality Act ("INA"). For the following reasons we will affirm.

### I.

Because we write only for the parties, it is not necessary to recite the facts of this case except insofar as may be helpful to our brief discussion. Rather, it is sufficient to note that Singh is a fourteen year old, single, male alien, who is a native and citizen of India who arrived in the United States in Miami, Florida on or about May 24, 2001. At the airport, Singh was denied admission into the United States based upon his false passport and visa. An INS officer took a sworn statement from Singh at the airport. Singh stated that he wanted to enter the United States to earn money, and that he could not do that in India because of the poor economic conditions there. He was subsequently placed into removal proceedings.

During a November 18, 2001 hearing before the Immigration Judge ("IJ"), Singh conceded that he was removable but expressed a fear of returning to India and requested asylum, withholding of removal and protection under the Convention Against Torture.[2] An application for asylum followed in which Singh sought asylum because he is Sikh, an ethnic and religious minority in India.

Singh testified that he lived with his mother and two older sisters in the Punjab in India. He stated that, when he was about seven years old his older sister was kidnapped while the family was sleeping. Singh stated that he had no personal recollection of the incident, and that incident was the only adverse occurrence to either of his sisters. Singh's sister was eventually returned unharmed.

Singh also testified that in February 2001, while he was sleeping on the roof of his home, some "masked people" tried to use ladders to climb up onto the roof. Singh testified that his mother and sister saw the masked people and screamed. Neighbors woke up and frightened the intruders off by throwing rocks at them. Singh's mother told him that the police were involved and the "masked people" may have been police because police vehicles were at the scene.

Singh also stated that he sought asylum because he was fearful of returning to the Punjab in India. Singh claims that he does not want to be kidnapped like his sister and that he is afraid of the masked people who tried to climb onto his roof. Singh contends he is subject to persecution and should be granted asylum.

---

1. The Honorable Berle M. Schiller, United States District Judge, Eastern District of Pennsylvania, sitting by designation.

2. Singh does not make an argument in his brief that the IJ erred in finding that he did not qualify for withholding of removal or protection under the Convention Against Torture, therefore, he has waived those avenues for relief on appeal. *See Ghana v. Holland*, 226 F.3d 175, 180 (3d Cir.2000). ("Rule 28(a)(5) of the Federal Rules of Appellate Procedure and our Local Rule 28.1(a) require appellants to set forth the issues raised on appeal and to present an argument in support of those issues in their opening brief.").

The IJ denied Singh asylum and ordered him removed to India, the BIA dismissed Singh's appeal and affirmed the IJ's decision. This appeal followed.

## II.

We must decide three issues on appeal. First, whether the BIA erred in finding Singh did not suffer past or future persecution. Second, whether the BIA erred by finding Singh is not a member of a "particular social group." Third, whether the BIA erred by admitting Singh's sworn airport statement into evidence.[3]

### A. Application for Asylum

Section 208(a) of the INA gives the Attorney General discretion to grant asylum to a deportable alien who qualifies as a "refugee." 8 U.S.C. § 1158(a). The term "refugee" is defined by statute as:

> [A]ny person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to avail himself or herself of the protection of that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A). Therefore, to be eligible for asylum, an asylum applicant must have either suffered past persecution or fear future persecution on one of the five grounds set fourth in § 1101(a)(42)(A). *Lukwago v. Ashcroft,* 329 F.3d 157, 167 (3d Cir.2003). Furthermore, the asylum applicant must prove a nexus between the persecution and one of the five specified

grounds, or the asylum claim must fail. *INS v. Elias–Zacarias,* 502 U.S. 478, 483–84, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992).

### 1. Persecution

■ To qualify for past persecution, Singh must first show he suffered "persecution" which includes: "threats to life, confinement, or torture, and economic restrictions so severe that they constitute a real threat to life or freedom." *Lin v. INS,* 238 F.3d 239, 244 (3rd Cir.2001) (citation omitted). Singh contends that he suffered past persecution and he fled India and his home in the Punjab because the Punjabi police attempted to kidnap him. The IJ found that Singh did not suffer past persecution because Singh had never been harmed by the police or any other person while he lived in India. That finding is supported by substantial evidence. *See* 8 U.S.C § 1252(b)(4)(B).

■ The phrase "well-founded fear" has both a subjective and objective component. *Abdille,* 242 F.3d at 495–96. An applicant for asylum must "show that he has a subjective fear of persecution that is supported by objective evidence that persecution is a reasonable possibility." *Id.* at 496 (citation omitted). The objective component is whether a reasonable person in Singh's situation would fear persecution if returned to India. *See Chang v. INS,* 119 F.3d 1055, 1065 (3d Cir.1997). The burden is on Singh to prove his claim. *See id.* at 1066.

The IJ concluded he could not speculate about whether the masked people who attempted to get onto Singh's roof were police. Similarly, the IJ did not wish to speculate that the masked people were in

---

**3.** We must sustain the BIA's determination if there is substantial evidence in the record to support it. *Abdille v. Ashcroft,* 242 F.3d 477, 483 (3d Cir.2001). Under this deferential standard, the BIA's findings must be upheld "unless the evidence not only supports a con-

trary conclusion, but compels it." *Id.* Because the BIA affirmed the IJ's ruling without an opinion, we review the decision of the IJ as if it were the decision of the BIA. *Abdulai v. Ashcroft,* 239 F.3d 542, 549 n. 2 (3d Cir. 2001).

fact there to attack or kidnap Singh, let alone that they were motivated by a desire to persecute him because of one of the grounds set forth in the definition of "refugee" contained in § 1101(a)(42)(A). There is also no evidence of government policy targeting Sikhs or Singh's family. The IJ's determination that Singh did not have a well-founded fear of future persecution is thus supported by substantial evidence and a reasonable adjudicator would not be compelled to conclude to the contrary.

### 2. Particular Social Group

There are three requirements to qualify for asylum based on membership in a "particular social group": (1) the alien must identify a group that constitutes a "particular social group," (2) the alien must establish that he/she is a member of that group; and (3) the alien must show that he/she was persecuted based on that membership. *Fatin v. INS,* 12 F.3d 1233, 1240 (3d Cir.1993). However, we need not inquire into this here because Singh has not established a nexus between any persecution and his "particular social group".[4]

### B. The "Airport" Statement

■ Singh made a timely objection to the admission of his airport interview based on his contention that he did not understand many of the questions posed to him by the INS officer who took his sworn statement.

Airport interviews are often problematic for many reasons and we explained why they must be used with caution in *Balasubramanrim v. INS,* 143 F.3d 157 (3d Cir. 1998). Here, the IJ recognized the suspect nature of airport interviews in general and carefully analyzed Singh's airport statement. The IJ questioned Singh extensively about the circumstances surrounding his airport statement and conceded that it would be natural for Singh to be frightened. Singh's fear however, did not compel the IJ to reject the statement.

The IJ found Singh to be generally credible but had problems with Singh's contention that he did not understand a lot of the questions posed at the airport because they were in English. The IJ concluded that the specificity of many of Singh's answers demonstrated that Singh understood the questions posed by the INS officer despite his subsequent testimony to the contrary.

That conclusion is consistent with the record and we do not conclude that the IJ erred in admitting the airport interview.

### III.

For the above reasons, we will affirm the decision of the BIA.

---

**4.** As we have just noted, Singh has not even established "persecution" or a reasonable fear of it.