**NORTHERN MICHIGAN HOSPITALS, INC.; Gifford Medical Center, Inc., for themselves and on behalf of all other similarly situated class members, Appellants,**

v.

**HEALTH NET FEDERAL SERVICES, LLC f/k/a Health Net Federal Services Inc., Health Net Federal Services Inc., Appellant,**

---

Lakewood Health System; Northwest Medical Center, for themselves and on behalf of all other similarly situated class members, Appellants,

v.

Triwest Healthcare Alliance Corp., Appellant.

Nos. 08–2860, 08–2981, 08–2861, 08–2995.

United States Court of Appeals, Third Circuit.

Argued June 2, 2009.

Filed: Sept. 8, 2009.

733

Teresa N. Cavenagh, John J. Soroko, Duane Morris, Philadelphia, PA, Michael R. Gottfried (Argued), Duane Morris, Boston, MA, Attorneys for Northern Michigan Hospitals, Inc., Gifford Medical Center, Inc., Lakewood Health System and Northwest Medical Center.

Christopher Flynn (Argued), Tracy A. Roman, April N. Ross, Crowell & Moring, Washington, DC, Attorneys for Healthnet Federal Services, LLC.

Scott M. Abeles, Robert R. Gasaway (Argued), Ashley C. Parrish, Robert S. Ryland, Kirkland & Ellis, Washington, DC, Lewis H. Lazarus, Matthew F. Lintner, Katherine J. Neikirk, Morris James, Wilmington, DE, Attorneys for Triwest Healthcare Alliance Corp.

Before: FISHER and CHAGARES, Circuit Judges, and DIAMOND,* District Judge.

* Honorable Paul S. Diamond, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

## OPINION OF THE COURT

FISHER, Circuit Judge.

Northern Michigan Hospitals, Inc. and Lakewood Hospital System (the Hospitals) appeal from the District Court's order granting a motion to dismiss without prejudice in favor of Health Net Federal Services, LLC (Health Net) and Triwest Healthcare Alliance Corp. (Triwest). The Hospitals filed putative class actions for breach of implied contract and unjust enrichment relating to Health Net and Triwest's alleged failure to properly reimburse the Hospitals for certain services they provided. The District Court dismissed the complaints on the basis that the Hospitals had failed to exhaust their administrative remedies. The Hospitals appealed from the District Court's order and Health Net and Triwest cross-appealed. For the reasons below, we will affirm.

### I.

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

### A. Background

In 1995, Congress established TRICARE, which is a comprehensive managed health care program covering active members of the Uniformed Services and their dependents. TRICARE was designed to improve the delivery and financing of health care services offered through the Civilian Health and Medical Program of the Uniform Services (CHAMPUS), the benefits program established in 1967 for former military personnel, and therefore it supplements but does not replace CHAMPUS. *See* 32 C.F.R. § 199.1(r). TRICARE is managed and administered by the TRICARE Management Activity (TMA), which is a field office in the Defense Department.

Triwest and Health Net are managed care support contractors for the TRICARE program, responsible for financially underwriting the delivery of health care services for TRICARE beneficiaries in the West and North regions respectively. In their roles as managed care support contractors, Triwest and Health Net are responsible for establishing networks of health care providers to offer services to TRICARE beneficiaries. Health services are provided through "Network Providers"—which include hospitals, other authorized medical facilities, doctors, and other health professionals—who enter into an agreement with a managed care support contractor to provide services for an agreed rate of reimbursement and "Non–Network Participating Providers"—which include hospitals, institutions, and individual professionals—who are reimbursed at rates set by TRICARE regulations. *See* 32 C.F.R. § 199.14(a). The Hospitals are non-network participating providers and claim they were not properly reimbursed for their "facility charges."

The payment method for facility charges is described as follows: "TRICARE payments for hospital outpatient facility charges that would include the overhead costs of providing the outpatient service would be paid as billed." 32 C.F.R. § 199.14(a)(xi). "Facility charges" are defined as:

> "[T]he charge, either inpatient or outpatient, made by a hospital or other institutional provider to cover the overhead costs of providing the service. These costs would include building costs, i.e. depreciation and interest; staffing costs; drugs and supplies; and overhead costs, i.e., utilities, housekeeping, maintenance, etc."

32 C.F.R. § 199.2.

In order to be reimbursed for providing health care services to a covered beneficia-

ry, Non–Network Participating Providers must submit a specific claim on behalf of the beneficiary to the appropriate regional contractor, and then any benefit payments due as a result of that claim submission will be made in the name of and mailed to the provider. 32 C.F.R. § 199.7(h)(2). "[B]y signing the claim form, the provider agrees to abide by the CHAMPUS-determined allowable charge or cost, whether or not lower than the amount billed." *Id.* Similarly, by accepting assignment on the claim form, participating providers agree to accept the CHAMPUS Maximum Allowable Charge (CMAC) as the maximum total charge for a service or item rendered to a covered beneficiary. *See* 32 C.F.R. § 199.2. Authorized providers seeking payment for services rendered to TRICARE beneficiaries have a duty to familiarize themselves with, and comply with, the program requirements. *See* 32 C.F.R. § 199.6(a).

## B.   Procedural History

On January 23, 2007, Northern Michigan and Gifford Medical filed their first amended complaint in the District Court, asserting claims for breach of contract implied in fact and breach of quasi-contract/unjust enrichment against Health Net. On February 7, 2007, Lakewood Health and Northwest Medical filed a nearly identical complaint in the District Court asserting the same claims against Triwest. Both complaints were filed on behalf of the named hospitals and a putative class of other Non–Network Participating Provider hospitals. The complaints each alleged damages in excess of $100

million based on the underpayment of the Hospitals' bills.

The Hospitals alleged that Health Net and Triwest refused to pay the Hospitals' facility charges for certain outpatient services rendered by the Hospitals to TRICARE beneficiaries, despite the fact that the Hospitals submitted claims to Health Net and Triwest which included such charges.[1] Health Net filed a motion to dismiss the complaint brought against it, arguing that the United States was a necessary and indispensable party, the United States was the real party in interest and the claims were thus barred by sovereign immunity, the Hospitals failed to exhaust their administrative remedies, and the Hospitals failed to state a cause of action. Similarly, Triwest filed a motion to dismiss the complaint brought against it for the same reasons and also on the grounds that the Hospitals' claims were preempted by federal law and TMA had primary jurisdiction.

The United States entered an appearance in the District Court and filed a Statement of Interest pursuant to 28 U.S.C. § 517. The United States argued that it was not the real party in interest, it was not a necessary and indispensable party, the "facility charge" issue underlying the Hospitals' complaints could be adjudicated under the Defense Department's administrative procedures, and the Hospitals misrepresented the Defense Department's interpretation of the TRICARE regulations. The parties submitted supplemental briefing in response to the Government's

---

1.   The Hospitals alleged that they incurred facility charges in connection with providing outpatient services to all of their patients, including TRICARE beneficiaries, and that they allocate "a portion of these facility charges to each of the procedures performed at their respective facilit[ies]." They also alleged that "[t]hese facility charges are includ-

ed within and constitute a portion of the costs reflected in the bill sent by the Hospitals for the specific services denoted on such bill." Additionally, the Hospitals alleged that they "submit a single unitary charge ... for each of the services rendered and the accompanying facility charge associated with the service rendered."

Statement of Interest, and the District Court held a hearing on the motions.

On May 30, 2008, 2008 WL 2233964, the District Court entered a Memorandum and Order granting the motions to dismiss both complaints, without prejudice, because the Hospitals failed to exhaust their available administrative remedies prior to seeking redress in the District Court. The District Court noted:

"There is no dispute that facility charges, as defined under the TRICARE regulations, are paid 'as billed' under 32 C.F.R. § [199.14(a)(5)(xi) ]. The dispute is thus not over the requirement of the regulation. Instead, the dispute is over whether the hospitals' claimed charges qualify for reimbursement as facility charges."

As a result, the District Court determined that the Hospitals' claims could be appealed through the TRICARE administrative review process. Although exhaustion was not statutorily required, the District Court decided to require exhaustion as an exercise of its discretion because doing so "would allow the agency to apply its special regulatory expertise to the dispute," and "would produce a factual record and the agency's position for later judicial review." Although the District Court dismissed the complaints on the exhaustion issue, it first held that the claims were not preempted and that the United States was not the real party in interest nor a necessary party to the litigation. The District Court did not reach the issue of whether the complaints failed to state a cause of action.

The Hospitals appealed the District Court's order, and Health Net and Triwest cross-appealed.

## II.

The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) and 28 U.S.C. § 1332(d)(2) because of diversity between the parties and because the amount in controversy exceeds the jurisdictional minimum. The parties assert that we have jurisdiction pursuant to 28 U.S.C. § 1291, which authorizes the exercise of appellate jurisdiction over "final decisions" of the district courts. A final decision is one which "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 234, 65 S.Ct. 631, 89 L.Ed. 911 (1945). But ordinarily, orders dismissing complaints without prejudice—like the one in this case—are neither final nor appealable within the meaning of § 1291. *See Ghana v. Holland*, 226 F.3d 175, 180 (3d Cir. 2000); *Welch v. Folsom*, 925 F.2d 666, 668 (3d Cir.1991); *Borelli v. City of Reading*, 532 F.2d 950, 951–52 (3d Cir.1976). Nonetheless, we have recognized a few limited exceptions to the general rule that dismissals without prejudice are not immediately appealable. "If the plaintiff cannot cure the defect that led to dismissal or elects to stand on the dismissed complaint, ... we have held that the order of dismissal is final and appealable." *Welch*, 925 F.2d at 666; *accord Ghana*, 226 F.3d at 180–81; *Nyhuis v. Reno*, 204 F.3d 65, 68 n. 2 (3d Cir.2000). Additionally, "[w]e have stated that an appellant who does not attempt to avail himself of the administrative process, but who instead files an appeal raising the argument that exhaustion would be futile, 'effectively stands on his original complaint,' and in such cases we may exercise jurisdiction over an order dismissing a complaint without prejudice." *Ghana*, 226 F.3d at 180–81 (quoting *Nyhuis*, 204 F.3d at 68 n. 2).

Although the Hospitals can cure the defect that led to the dismissal of their complaints by availing themselves of the administrative process, the Hospitals have instead argued that exhaustion of administrative remedies would be futile and, in

doing so, have effectively declared an intent to stand on their complaints. Therefore, we may exercise jurisdiction over this appeal consistent with § 1291. As for our standard of review, we will consider "de novo the applicability of exhaustion principles, because it is a question of law," but "[w]hen the District Court declines to grant an exception to the application of exhaustion principles, we review for abuse of discretion." *Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 248 (3d Cir.2002).

## III.

### A.

■ The Hospitals argue that the District Court erred when it determined that their claims could be appealed through the TRICARE administrative appeals process, asserting that the claims they raised in their complaints are not appealable issues under the TRICARE administrative regulations. More specifically, the dispute in this case is over whether certain charges that the Hospitals submitted qualify for reimbursement as facility charges. The Hospitals contend that this issue is not appealable under TRICARE regulations— and in particular under 32 C.F.R. § 199.10(a)—because the dispute involves the interpretation of a regulation and is thus solely a legal dispute and not a factual one.

An appealable issue under TRICARE regulations is one that involves a "[d]isputed question[ ] of fact which, if resolved in favor of the appealing party, would result in the authorization of CHAMPUS benefits." 32 C.F.R. § 199.2. Accordingly, when "no facts are in dispute," an issue is not administratively appealable. 32 C.F.R. § 199.2. The regulations also exclude certain issues from being appealed administratively, such as when a challenge is made to "the propriety, equity, or legality of any provision of law or regulation," 32 C.F.R. § 199.10(a), when the dispute is

in regard to "a requirement of the law or regulation," 32 C.F.R. § 199.10(a)(6)(i), and when the issue in dispute is "[t]he amount of the CHAMPUS-determined allowable cost or charge," 32 C.F.R. § 199.10(a)(6)(ii).

Although the Hospitals assert that the issue is whether Health Net and Triwest are required to pay facility charges in addition to paying maximum allowable charges, this contention oversimplifies the nature of the dispute. Without question, the regulations state that certain services are reimbursed based on a maximum allowable charge calculation and that facility charges, which are not subject to a maximum allowable charge, are paid as billed. *See* 32 C.F.R. § 199.14(a)(5)(i)–(xi). But the regulations are equally clear that the Hospitals are not allowed to simply submit bills for any amount and then claim that they are entitled to reimbursement for the full amount charged because any amount above the CMAC represents their "facilities" expenses.

Hence, the real question is whether the Hospitals are entitled to more money because the regulations have not been properly applied to their claims for reimbursement. Considered in this light, the dispute at issue is not a purely legal one, but rather requires factual determinations such as whether expenses that qualify as facility charges were incurred, whether such charges were properly billed, and how much is owed if they were incurred and properly billed. Therefore, what is required by the underlying dispute in this case is an application of the TRICARE regulations to the Hospitals' specific claims for reimbursement. If these disputed questions of fact are resolved in the Hospitals' favor, then they will be entitled to additional payment, which is the relief they are purportedly seeking, whereas "resolving" the question of

whether facility charges can be paid in addition to CMACs will not entitle them to additional payment without further assessment of the actual claims they submitted.

The central claim presented in the Hospitals' complaints is best understood as a challenge to the denial of payment, which is an appropriate issue for administrative appeal. Accordingly, there are administratively appealable issues under the TRICARE regulatory scheme.

## B.

Next, the Hospitals argue that even if their claims are administratively appealable, exhaustion of administrative remedies would be futile, as well as unnecessarily burdensome, and therefore the District Court should not have imposed this requirement. The statutes and regulations governing TRICARE do not mandate the exhaustion of administrative remedies. In cases where exhaustion is not required, we have held that the decision of whether to require exhaustion "is a matter of sound judicial discretion," which should "be guided by rationales advanced for the judicially created exhaustion doctrine." *Cerro Metal Products v. Marshall,* 620 F.2d 964, 970 (3d Cir.1980). The rationales or purposes for requiring exhaustion are as follows: (1) "promot[ing] administrative efficiency by preventing premature interference with the agency processes"; (2) "respect[ing] executive autonomy by allowing an agency the opportunity to correct its own errors"; (3) "facilitat[ing] judicial review by affording courts the benefits of the agency's experience and expertise"; and (4) "serv[ing] judicial economy by having the agency or other tribunal, rather than the district court, compile a factual record." *Id.* (internal quotation marks omitted); *see Wilson v. MVM, Inc.,* 475 F.3d 166, 173 (3d Cir.2007) ("[E]xhaustion of administrative remedies serves to promote administrative efficiency, respect executive auton-

omy by allowing an agency the opportunity to correct its own errors, provide courts with the benefit of an agency's expertise, and serve judicial economy by having the agency compile the factual record." (internal quotation marks and alterations omitted)).

We have referred to judicially created exhaustion as prudential exhaustion and have explained that "[b]ecause of its nature, prudential exhaustion can be bypassed under certain circumstances, including waiver, estoppel, tolling or futility." *Wilson,* 475 F.3d at 174; *see also Facchiano v. U.S. Dep't of Labor,* 859 F.2d 1163, 1167–68 (3d Cir.1988) (excusing exhaustion when (1) "the challenged agency action presents a clear and unambiguous violation of statutory or constitutional rights"; (2) "resort to administrative procedures is clearly shown to be inadequate to prevent irreparable injury"; and (3) requiring exhaustion is "futile"). "However, merely because exhaustion requirements are prudential does not mean that they are without teeth. Even prudential exhaustion requirements will only be excused in a narrow set of circumstances." *Wilson,* 475 F.3d at 175. In particular, "[i]n order to invoke the futility exception to exhaustion, a party must 'provide a clear showing' of futility before the District Court." *Id.* (quoting *D'Amico v. CBS Corp.,* 297 F.3d 287, 293 (3d Cir. 2002)).

■ The Hospitals did not establish a "clear and positive showing" of futility before the District Court, and therefore the District Court acted within its discretion by requiring the Hospitals to exhaust their available administrative remedies. *See Wilson,* 475 F.3d at 175. Although the Hospitals argue that exhaustion would be futile because TMA has unambiguously rejected the Hospitals' interpretation of the controlling regulations, this argument ig-

nores the fact that the real dispute is not about the meaning of the regulations but whether the Hospitals submitted claims for expenses that qualify as "facility charges." As to this latter issue, TMA has not had an opportunity to evaluate the specific claims that the Hospitals allege were underpaid. Thus, the relief the Hospitals seek is not foreclosed because, as previously discussed, the Hospitals have the opportunity to present evidence to TMA that they incurred expenses that qualify as facility charges, that they properly billed these charges, and that Health Net and Triwest did not reimburse them for these expenses.

Far from being futile, it remains possible that recourse through the administrative appeals process may result in an award of additional reimbursement to the Hospitals. On this point, Health Net and Triwest persuasively argue that the Hospitals' real complaint is that they may not ultimately prevail at the agency level and that exhaustion will be time consuming. But these reasons are not enough to excuse exhaustion and do not establish that exhausting administrative remedies would be futile. With respect to their argument about the "burdensomeness" of requiring exhaustion in a putative class action case, the District Court pointed out that "the same thousands of claims at issue in the administrative appeal process would also be at issue in this litigation." And, more basically, there are currently only a total of four hospitals involved in this case, and these are the only parties that have been required to exhaust their administrative remedies.

Additionally, requiring the Hospitals to exhaust their remedies under the TRICARE regulatory scheme is consistent with the traditional rationales for requiring the exhaustion of administrative remedies. Requiring the Hospitals to exhaust their administrative remedies will help to avoid unnecessary intrusion by the judiciary into Executive Branch affairs and will promote judicial economy by allowing the agency to utilize its expertise in resolving disputed factual issues, correct its own errors (if any resulted from Health Net and Triwest's refusal to provide additional reimbursement), and develop the factual record for the benefit of a reviewing court in the event that the administrative process does not resolve the dispute in its entirety.

■ Accordingly, we conclude that the District Court did not abuse its discretion in requiring the Hospitals to exhaust their administrative remedies because doing so is neither futile nor unduly burdensome, and is consistent with the traditional justifications for prudential exhaustion.

## IV.

■ In their cross-appeals, Health Net and Triwest raise several alternative reasons for affirming the District Court's order; however, we need not reach these alternative arguments.[2] Because the Hos-

---

**2.** We will briefly address the argument that the Hospitals lacked standing to bring their claims in light of our independent obligation to ensure that the requirements of Article III are satisfied. *See Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 399 F.3d 248, 254 (3d Cir.2005) ("Standing is a threshold jurisdictional requirement, and we have an obligation to examine our own jurisdiction and that of the district courts." (internal quotation marks and citation omitted)). The Hospitals have satisfied the injury in fact requirement of standing by alleging that they provided ser-

vices to TRICARE beneficiaries within Triwest and Health Net's region, submitted claims for reimbursement to Triwest and Health Net for these services, and that Triwest and Health Net failed to properly reimburse them for the services they rendered. Additionally, because Triwest and Health Net are responsible for reimbursing Non–Network Participating Providers, such as the Hospitals, for the services they provide to TRICARE beneficiaries, it is clear that the Hospitals injury is traceable to and redressable by Tri-

pitals' claims are administratively appealable under the TRICARE regulatory scheme and because requiring the exhaustion of administrative remedies is not unduly burdensome or futile and is consistent with the traditional justifications for requiring prudential exhaustion of administrative remedies, we will affirm the order of the District Court.

west and Health Net. Accordingly, we conclude that the Hospitals had standing to pursue their claims. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (describing three requirements of the "irreducible constitutional minimum" of standing: injury in fact, traceability, and redressability).