174 F.3d 271
 Abdullah Y. SALAHUDDIN, Plaintiff-Appellant,
v.
Sergeant MEAD, Correction Officer; Robert H. Kuhlmann,
Superintendent, Sullivan Correctional Facility;
Philip Coombe, Commissioner, Department
of Correctional Services,
Defendants-Appellees.
 Docket No. 97-2522.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 11, 1999.
Decided April 22, 1999.
 
 James C. Fitzpatrick, Hughes Hubbard & Reed, New York, New York, for Plaintiff-Appellant.
 Bruce Brown, Assistant Attorney General, New York, New York (Dennis C. Vacco, Attorney General of the State of New York, Thomas D. Hughes, Assistant Solicitor General, New York, New York, on the brief), for Defendants-Appellees.
 Before: JACOBS and SOTOMAYOR, Circuit Judges, and SAND,* District Judge.
 SOTOMAYOR, Circuit Judge:
 
 
 1
 Plaintiff-appellant Abdullah Y. Salahuddin, a prisoner, brought suit against defendant-appellee prison officials and guards under 42 U.S.C. § 1983, alleging that defendants violated his First Amendment rights by preventing him from meeting with a prison chaplain to discuss his upcoming marriage and his daughter's hospitalization. On June 26, 1997, the United States District Court for the Southern District of New York (Mukasey, J.) dismissed the action on the ground that plaintiff failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a), as amended by the Prison Litigation Reform Act (the "Act" or the "PLRA"), a statute enacted after plaintiff filed his complaint. On appeal, plaintiff argues that (i) the lower court improperly applied the exhaustion requirement of the amended § 1997e(a) in an action pending as of the effective date of the PLRA; (ii) even if the amended § 1997e(a) applies to this action, plaintiff in fact exhausted his administrative remedies, and (iii) even if the district court was correct that he failed to exhaust his administrative remedies, plaintiff is entitled to proceed with his claim for money damages because this relief was not available to him through the prison grievance system. For the reasons stated below, we agree with the first of these contentions and therefore reverse the lower court's decision without addressing plaintiff's remaining arguments.
 
 BACKGROUND
 A. Plaintiff's Factual Allegations
 
 2
 On October 10, 1995, while a prisoner at the Sing Sing Correctional Facility in Ossining New York, plaintiff filed his initial complaint in this action. In his amended complaint, filed on February 28, 1996, plaintiff claimed that during an earlier period of incarceration at the Sullivan Correctional Facility, prison officials twice denied his requests to meet with the resident Islamic Chaplain, Imam Hajji Hassan Muhammad. On the first such occasion, in late December 1994, plaintiff sought counseling in connection with his upcoming marriage. Defendant Mead, a prison guard, allegedly prevented a planned meeting between plaintiff and Chaplain Muhammad by denying plaintiff permission to visit the Chaplain's prison office at the appointed time. Plaintiff claims that as a result, his marriage ceremony was delayed.
 
 
 3
 The amended complaint also describes a second incident occurring in January 1995, in which defendant Mead rejected plaintiff's request for religious counseling. During the early part of the month, plaintiff's former wife alerted him by letter that their daughter had been hospitalized with possible serious medical complications related to her pregnancy. Upon receiving this news, plaintiff secured a pass to visit Chaplain Muhammad, but was again denied access to the chaplain by defendant Mead. On January 13, 1995, plaintiff sent a letter of complaint to defendant Robert H. Kuhlman, the Superintendent of the Sullivan County facility.
 
 
 4
 Plaintiff's amended complaint further alleges that Mead retaliated against him for having sent his January 13 letter. Specifically, the amended complaint refers to an incident on January 15, in which several correctional officers searched plaintiff's cell at Mead's direction. Plaintiff reports that he heard Mead direct an officer to conduct the search "with a fine tooth comb" and that Mead expressed a desire to show plaintiff "whose [sic] boss." Plaintiff complains that he was forced to send home several law books and religious texts, at his own expense, for fear that prison officials would otherwise destroy these materials. After Mead's search, plaintiff sent two additional letters of complaint to Kuhlman, dated January 15 and 31, 1995.
 
 
 5
 On February 6, 1995, plaintiff wrote to defendant Philip Coombs, the Commissioner of the New York State Department of Corrections ("DOCS"). Plaintiff described Mead's alleged misconduct; he argued that the prison's policy of preventing him from meeting with his chaplain violated his right to the free exercise of religion; and he complained that Kuhlman failed to respond to plaintiff's three prior letters complaining about these problems. On February 21, 1995, Glen S. Goord, Deputy Commissioner of Correctional Facilities, wrote to plaintiff on behalf of Coombs and explained that departmental policy prohibited prisoners from leaving their "program assignment[s]" except for "[m]edical appointments, legal visits, family visits, and religious services." Because plaintiff had failed to explain "the nature of [his] emergency," the letter concluded that Kuhlman and Mead had properly denied plaintiff access to Chaplain Muhammad. Goord further advised plaintiff that "[i]n the future," he should "follow facility rules regarding call-outs of this nature."
 
 B. Procedural History
 
 6
 In response to plaintiff's initial October 10, 1995 complaint, the district court found that plaintiff's allegations did not rise to the level of a constitutional violation, and that he had failed to allege defendants' direct and personal involvement in any possible wrongdoing. The district court dismissed the action sua sponte on the day it was filed and entered judgment for defendants. On appeal, this Court vacated the district court's judgment and ordered that plaintiff be permitted to file an amended complaint setting forth his claims with greater specificity. Plaintiff filed his amended complaint on February 28, 1996, seeking damages under 42 U.S.C. § 1983. He claimed that defendants violated his First Amendment rights by preventing him from consulting with his chaplain and retaliating against him for his complaints to prison officials.
 
 
 7
 On April 26, 1996, several months after plaintiff filed his initial complaint, the President signed the PLRA into law. The Act amended 42 U.S.C. § 1997e(a) to read as follows:
 
 
 8
 No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.
 
 
 9
 42 U.S.C. § 1997e(a).[1] On defendants' motion, the district court dismissed plaintiff's amended complaint by order of June 26, 1997, ruling that plaintiff failed to comply with this newly enacted exhaustion requirement before bringing suit. On appeal from that order, plaintiff maintains that the district court erroneously concluded that the amended § 1997e(a) can be applied to dismiss an action pending as of the time that the PLRA was enacted. We agree.
 
 DISCUSSION
 
 10
 In its landmark decision in Landgraf v. USI Film Prods., 511 U.S. 244, 280, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), the Supreme Court directed that "[w]hen a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach." Following this approach, we conclude that by its express terms, the amended § 1997e(a) does not apply to actions pending as of the Act's effective date. The new provision announces that no action "shall be brought" until administrative remedies have been exhausted. Significantly, the amended § 1997e(a) does not declare that no action "shall be maintained" unless administrative remedies have been exhausted, nor does it otherwise address the circumstances in which a "pending" matter may be dismissed. Thus, "[a] plain reading of the section makes it clear that it applies only to actions that have yet to be brought--not to ones that have already been filed." Bishop v. Lewis, 155 F.3d 1094, 1095 (9th Cir.1998) (declining to enforce the amended § 1997e(a) in an action that was pending as of the Act's effective date); see also Wright v. Morris, 111 F.3d 414, 418 (6th Cir.1997) ("[Section 1997e(a) ] expressly governs the bringing of new actions, not the disposition of pending cases.").
 
 
 11
 The district court rejected this plain reading of the amended § 1997e(a) by focusing on the word "shall." Responding to plaintiff's contention that the term signifies a future command, the court more narrowly interpreted "shall" to be an "imperative." Salahuddin v. Mead, No. 95civ.8581 (MBM), 1997 WL 357980, at * 3 (S.D.N.Y. June 26, 1997). The court thereby arrived at its "plain sense of the statute" as a "bar [to] prisoner lawsuits unless administrative remedies have been exhausted." Id. There is no doubt that "shall" is an imperative, but it is equally clear that it is an imperative that speaks to future conduct. Even the most demanding among us cannot reasonably expect that a person "shall" do something yesterday. Moreover, our analysis would be incomplete if we were to focus on the word "shall" without considering the entire statutory phrase "shall be brought." Giving this phrase its most natural construction, it is a command that governs the circumstances in which an action yet to be initiated may "be brought." See Gibbs v. Ryan, 160 F.3d 160, 162 (3rd Cir.1998) ("In the context of filing a civil action, 'bring' ordinarily refers to the 'initiation of legal proceedings in a suit.' ") (quoting Black's Law Dictionary 192 (6th ed.1990)). Plaintiff had already filed his complaint as of the effective date of the Act, and the command of the amended § 1997e(a) therefore had no application to this action.
 
 
 12
 We will not strain to detect or create an ambiguity in the otherwise plain terms of the provision before us. It is of course possible for Congress to state in even clearer terms that a particular statutory provision is to apply only prospectively, particularly by crafting a subsection to that provision which speaks solely and specifically to the question of timing. See, e.g., Landgraf, 511 U.S. at 258 (quoting section 109(c) of the Civil Rights Act of 1991: " 'The amendments made by this section shall not apply with respect to conduct occurring before the date of enactment of this Act.' "). The Supreme Court has demonstrated, however, that a statute can offer express guidance even without such a targeted subsection. See Kaiser Aluminum & Chem. Corp. v. Bonjorno, 494 U.S. 827, 838, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990) (holding that the "plain language" of the newly enacted federal post-judgment interest statute, 28 U.S.C. § 1961 (1982), which requires that interest " 'be calculated from the date of the entry of the judgment,' " "evidences clear congressional intent that [the provision] is not applicable to judgments entered before its effective date."). Moreover, in its post-Landgraf decisions, the Court has hinted that such a heightened level of clarity, if it is ever required, is required only to justify the retroactive application of a newly enacted provision.[2] See Lindh v. Murphy, 521 U.S. 320, 328 n. 4, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997) ("[C]ases where this Court has found truly 'retroactive' effect adequately authorized by a statute have involved statutory language that was so clear that it could sustain only one interpretation"); see also Hughes Aircraft Co. v. United States ex rel. Schumer, 520 U.S. 939, 950, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997) ("[T]he only 'presumption' mentioned in [Landgraf ] is a general presumption against retroactivity."). By implication, and as demonstrated by Kaiser, Congress can reveal its intent to apply a provision prospectively in fewer words and without a discrete statutory subsection addressed specifically to that issue. We are therefore satisfied that by limiting the exhaustion requirement to actions that "shall be brought," Congress has expressly precluded application of that requirement to actions that have already been filed.
 
 
 13
 The district court issued its contrary ruling based largely on its conclusion that this Court had already evaluated the "identical ... 'shall be brought' " language in our earlier decision in Covino v. Reopel, 89 F.3d 105 (2d Cir.1996), a case in which we applied a filing fee provision of the PLRA to an action pending as of the Act's effective date. Salahuddin, 1997 WL 357980, at * 3. The provision at issue in Covino actually directs that "if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1) (emphasis added). Thus, contrary to the district court's characterization, this provision does not describe the circumstances in which an action "shall be brought," but rather describes the circumstances in which fees "shall be ... pa[id]." Moreover, unlike the amended § 1997e(a), which requires that a plaintiff exhaust administrative remedies in advance of bringing suit, the new § 19156(b)(1) mandates that prisoners pay fees without specifying when during a lawsuit payment is required. In this way, the amended § 1997e(a) expressly ceases to apply immediately upon the filing of a complaint, while there is nothing in the language of the amended § 1915(b)(1) to prevent a prisoner from paying the required fee at a subsequent point in the litigation.
 
 
 14
 We recognize that the Covino Court expansively declared that "[t]he PLRA contains no effective date provision, and none of its provisions gives any explicit indication as to whether the Act would have any application to pending appeals." 89 F.3d at 106. This statement appeared in dicta, however, as the Court's holding was limited to the proper application of the amended § 1915(b)(1), a provision that we have explained is fundamentally unlike the provision now before us. Moreover, while it is true that the PLRA does not contain a general effective date provision, there can be no question that certain provisions of the Act do provide clear guidance as to their application to cases pending before enactment. One obvious example is § 802 of the PLRA, which amended 18 U.S.C. § 3626, a provisions which addresses the courts' authority to order prospective relief in prisoner litigation. By its express terms, this provision "appl[ies] with respect to all prospective relief whether such relief was originally granted or approved before, on, or after the date of the enactment of this title."[3] Prison Litigation Reform Act of 1995, Pub.L. No. 104-134, § 802(b)(1), 110 Stat. 1321, 1321-70 (1996). In light of this provision, there can be no denying that the Covino Court's blanket pronouncement concerning the complete absence of express guidance throughout the Act was over-broad. We therefore decline to elevate the Covino Court's dicta to a binding rule of decision controlling our disposition of this appeal.
 
 CONCLUSION
 
 15
 For the reasons explained, we join all other federal circuit courts to have considered this issue and hold that the exhaustion requirement announced in the amended § 1997e(a) cannot be applied to an action already pending as of the time that the PLRA was enacted. See Bishop, 155 F.3d at 1095; Wright, 111 F.3d at 418; Garrett v. Hawk, 127 F.3d 1263, 1266 (10th Cir.1997) (dicta ). We therefore reverse the district court's order dismissing plaintiff's complaint and remand this matter for further proceedings.[4]
 
 
 
 *
 The Honorable Leonard B. Sand, District Judge of the United States District Court for the Southern District of New York, sitting by designation
 
 
 [1]
 Prior to its amendment, § 1997e(a) provided that "in any action brought pursuant to section 1983 of this title by an adult convicted of a crime confined in any jail, prison, or other correctional facility, the court shall, if the court believes that such a requirement would be appropriate and in the interests of justice, continue such case for a period of not to exceed 180 days in order to require exhaustion of such plain, speedy, and effective administrative remedies as are available." 42 U.S.C. § 1997e(a)(1) (1994). Thus, the Act removes court discretion in this area by making exhaustion mandatory in prisoner litigation
 
 
 [2]
 In this setting, "retroactive" must be understood as a term of art that does not encompass every situation in which a newly enacted provision is applied to a case pending as of the date of enactment. In Landgraf, the Supreme Court specifically explained that in order to determine whether a newly enacted provision operates retroactively, a "court must ask whether the new provision attaches new legal consequences to events completed before its enactment." Landgraf, 511 U.S. at 269-70. Under this formulation, numerous provisions, typically those relating to procedural or jurisdictional matters, can be applied to a pending action without being said to apply "retroactively." Id. at 274-75
 
 
 [3]
 The Sixth Circuit has reasoned that "had Congress intended the new [exhaustion] requirement to pertain to pending cases it would have employed the same language as it used in § 802(b)(1) to make that intent clear." Wright, 111 F.3d at 418. The district court rejected this view on the basis that the amended § 1997e(a) and the amended § 3626 are distinct in purpose and design, and that specific language in one provision therefore cannot be taken to suggest anything regarding the absence of such language in the other. Salahuddin, 1997 WL 357980, at * 3. We need not resolve this debate, however, because we base our holding on a plain reading of the amended § 1997e(a)
 
 
 [4]
 We express no opinion as to defendants' claim, which the district court did not reach, that they are shielded from liability on the basis of qualified immunity