**CITY OF NEW YORK, Plaintiff,**

v.

**BERETTA U.S.A. CORP., et al., Defendants.**

No. 00 CV 3641(JBW)(CLP).

United States District Court, E.D. New York.

April 1, 2005.

Decision adhered to on reconsideration, 228 F.R.D. 147, 2005 WL 958235 .

Eric Proshansky, Corporation Counsel of the City of New York by Eric Proshansky, Richard J. Costa, Melanie Ash, New York, NY, for Plaintiff City of New York.

Gordon, Feinblatt, Rothman, Hoffberger & Hollander, LLC by Lawrence S. Greenwald, Baltimore, MD, for Defendant Beretta U.S.A. Corp.

Friday, Eldredge & Clark, LLP by Jonann E. Chiles, Little Rock, AK, for Defendant Browning Arms Co.

Jones Day by Thomas E. Fennell, Mark R. Hall, Dallas, TX, for Defendant Colt's Manufacturing Co., Inc.

Budd Larner, P.C. by Timothy A. Bumann, Atlanta, GA, for Defendants Forjas Taurus, S.A. and Taurus International Manufacturing, Inc.

Renzulli, Pisciotti & Renzulli, LLP by John F. Renzulli, Scott C. Allan, New York, NY, for Defendant Glock, Inc.

Shook Hardy & Bacon, LLP by Stacy E. Deere, Kansas City, MO, for Defendant Smith & Wesson Corp.

Wildman, Harrold, Allen & Dixon, LLP by James P. Dorr, Chicago, IL, for Defendant Sturm, Ruger & Co., Inc.

The Chiafullo White Group, LLP by Christopher M. Chiafullo, Watchung, NJ, for Defendants AcuSport Corp.; Alamo Leather Goods, Inc.; Bangers, L.P.; Bill Hicks & Co.; Brazas Sporting Arms, Inc.; Camfour Inc.; Chattanooga Shooting Supplies, Inc.; Davidson's Supply Co., Inc.; Dixie Shooters Supply, Inc.; Ellet Brothers, Inc.; Euclid Ave. Sales Co.; Faber Brothers, Inc.; Glen Zanders Fur and Sporting Goods Co.; Hicks, Inc.; Kiesler Police Supply, Inc.; Lew Horton Distributing Co.; Lipsey's Inc.; MKS Supply Co.; Riley's, Inc.; RSR Group, Inc.; Ron Shirk's Shooter's Supplies, Inc.; Southern Ohio Gun, Inc.; Sports South, Inc.; Valor Corp.; Walter Craig, Inc.; Williams Shooter's Supplies.

Bureau of Alcohol, Tobacco, Firearms and Explosives, Office of Chief Counsel by Barry Orlow, Washington D.C., United States Attorney's Office, Eastern District of New York, by Elliot M. Schachner, Brooklyn, NY, for Bureau of Alcohol, Tobacco, Firearms and Explosives.

## MEMORANDUM & ORDER

WEINSTEIN, Senior District Judge.

### Table of Contents

I. Introduction .................................................. 137

II. Facts ........................................................ 137
 A. Basis for Discovery ...................................... 137
 B. Information Produced in NAACP Case ...................... 138
 C. City's April 5, 2004 Letter ............................. 138
 D. City's April 2004 Subpoena .............................. 138
 E. Objections Based on Consolidated Appropriations Act of 2004 .... 139
 F. Objections Based on Consolidated Appropriations Act of 2005 .... 139
 G. Scope of May 19, 2004 Order ............................. 139
 H. City Order of Protection ................................ 139
 I. Omitted Data ............................................ 140
 1. Trace Data ........................................... 140
 2. Purchaser Information ................................ 140
 3. Trace Data Decode Tables ............................. 140
 J. City's Motion to Compel ................................. 140
 K. Magistrate Judge's February 22, 2005 Decision ........... 141
 L. Arguments of the Parties ................................ 141

III. Law ........................................................141
 A. Rule 72(a) ...............................................141
 B. Consolidated Appropriations Act of 2005 ....................142
 1. Act .................................................142
 2. Legislative History ..................................142
 3. Retroactivity .......................................143
 a. Generally ........................................143
 b. Statutory Interpretation ..........................143
 c. Non-retroactivity ................................145

IV. Application of Law to Facts ...................................146
 A. Trace Data, Purchaser Information and Data Decode Tables .......146
 B. Non-application of 2005 Act ...............................146

V. Conclusion .................................................146

## I. Introduction

Plaintiff City of New York ("the City") sues handgun manufacturers, importers, and distributors for common law and statutory public nuisance. The City has served subpoenas on the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") for production of firearms licensing and tracing data. Federal licensing information exists for manufacturers, wholesalers and retail distributors. Tracing allows the use of a gun's stamped serial number to show its movement from manufacturer to sale by a retailer.

ATF opposes discovery of a subset of information, claiming that: (1) the information was not identified in the subpoena; and (2) it is prohibited from disclosure by the terms of the Consolidated Appropriations Act of 2005. It previously made a similar argument with regard to the Consolidated Appropriations Act of 2004 that was rejected by the Magistrate Judge and the district court. *See City of New York v. Beretta U.S.A. Corp.,* 222 F.R.D. 51, 54 (E.D.N.Y.2004); *City of New York v. Beretta U.S.A. Corp.,* 222 F.R.D. 48 (E.D.N.Y.2004).

The Magistrate Judge rejected the argument by ATF that the 2005 Act precludes it from supplying information to the parties. The decision reaffirmed a fundamental of federal jurisprudence that, within reasonable limits, civil litigants be able to discover the facts relating to arguably valid claims and defenses. Courts cannot adjudicate fairly unless their judgments are based on available evidence. It cannot be assumed—as is claimed by defendants and ATF—that Congress is unaware of these fundamental principles, and that it has interjected itself into the instant case to tilt the scales of justice against the plaintiffs by changing the applicable discovery rules.

ATF appeals, pursuant to Federal Rule of Civil Procedure 72(a), from the Magistrate Judge's February 22, 2005 order granting discovery. For the reasons set forth below, the order of the Magistrate Judge is affirmed.

## II. Facts

### A. *Basis for Discovery*

The City seeks injunctive relief and abatement of the public nuisance allegedly caused, contributed to and maintained by defendants' negligent marketing and distribution practices for handguns. According to the City, a public nuisance exists in New York in the form of widespread access to illegal handguns, harming the population at large. It alleges:

> Because virtually every gun used in a crime starts off as a legal firearm, it is evident that guns manufactured by defendant gun manufacturers and distributed by defendant gun distributors are diverted into an illegal gun market catering to juveniles, criminals and other persons prohibited from owning guns. That diversion is a result of defendants' failure to institute appropriate marketing and distribution practices. Defendants have reason to know or should know that (a) some of the firearms they manufacture and/or distribute will be diverted into the hands of those who would violate the law, and (b) they could take steps to reduce the number of

firearms that fall into the hands of criminals by changing their merchandising practices.

Second Amended Complaint at 2. Information about the marketing and distribution of firearms is critical both to the City's case and to the defense by members of the firearms industry.

On April 20, 2004, the City served a subpoena upon ATF calling for the production of licensing and tracing information previously produced in *NAACP v. Acusport,* 210 F.R.D. 268 (E.D.N.Y.2002). The *NAACP* action was brought by a private advocacy group against gun manufacturers and distributors, alleging that the improper distribution of guns constituted a public nuisance. The case was dismissed because the NAACP could not demonstrate that its members had suffered the particular harm required for a private plaintiff to prove a public nuisance. *See NAACP v. Acusport,* 271 F.Supp.2d 435, 526 (E.D.N.Y.2003).

### B. *Information Produced in NAACP Case*

In the *NAACP* action, ATF produced firearms data for the period 1989 through 2000. Law enforcement sensitive trace data were made available in that case subject to the terms of an Order of Protection. The *NAACP* Order of Protection included restrictions on the dissemination and use of sensitive data. *See NAACP v. Acusport,* 210 F.R.D. 268, 429–45 (E.D.N.Y.2002). Trace data elements that were subject to the *NAACP* Order of Protection included some, but not all, of the trace data elements for open cases. An "open case" and an "incomplete trace" are defined in Part II.I.1, *infra.* The trace data elements that were produced pursuant to the *NAACP* Order of Protection were specified in an appendix to that order. *See id.* at 433–40.

ATF produced various other types of trace data to the NAACP outside of the *NAACP* Order of Protection, based on its conclusion that such elements were not law enforcement sensitive. At the time ATF produced documents in the *NAACP* action, it was routinely providing similar information in response to requests under the Freedom of Information Act, 5 U.S.C. § 552. Among the nonsensitive elements provided to the NAACP outside of the *NAACP* Order of Protection were data about purchasers of firearms. Information that ATF produced to the NAACP concerning open cases was produced subject to the *NAACP* Order of Protection.

### C. *City's April 5, 2004 Letter*

On April 5, 2004, the City sent a letter to ATF defining the ATF Trace Data it sought:

Pursuant to the directions received from Judge Weinstein and Magistrate Judge Pollak, please allow this letter to serve as notice to the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF") of the City of New York's request for information related to the ATF"s Firearms Trace Database:

i) The City requests all information made available by the ATF to the parties in the NAACP case, under the same terms and conditions that govern disclosure in that case. . . .

Apr. 5, 2004 Ltr. at 1. Following receipt of the letter, ATF requested that the City provide this request in the form of a subpoena.

### D. *City's April 2004 Subpoena*

On April 20, 2004, the City served ATF with a subpoena calling for production of:

1. The firearms tracing system ("FTS") data included in the Oracle Table & Data Elements previously produced by ATF under protective order in the *NAACP* action updated to reflect data elements for the period from 1989 through the most currently available data;

2. The firearms licensing system ("FLS") data previously produced by ATF under protective order in the *NAACP* action updated to reflect data elements for the period from 1989 through the most currently available data; and

3. All data produced in response to the Subpoena served by plaintiff, Joan Truman Smith, in *Smith v. Bryco Arms,* 02–CV–3029, dated April 15, 2004, and served upon ATF on April 16, 2004.

### E. Objections Based on Consolidated Appropriations Act of 2004

ATF objected to the April 20, 2004 subpoena on the grounds that the subpoenaed documents were immune from disclosure under the Consolidated Appropriations Act of 2004 ("the 2004 Act") and were protected under the law enforcement privilege. Congress enacted the 2004 Act on January 23, 2004. Pub.L. 108–199, 118 Stat. 3 (2004), codified as amended at 28 U.S.C. § 530C. The 2004 Act provided:

> [N]o funds appropriated under this or any other Act may be used to disclose to the public the contents or any portion thereof of any information required to be kept by licensees pursuant to section 923(g) of title 18, United States Code, or required to be reported pursuant to paragraphs (3) and (7) or section 923(g) of title 18, United States Code, except that this provision shall apply to any request for information made by any person or entity after January 1, 1998[.]

118 Stat. at 53 (emphasis added).

ATF argued that the 2004 Act prohibited the disclosure to plaintiffs of any trace data, multiple sales records, or other federal firearms licensing information required to be kept pursuant to Section 923(g). *See City of New York v. Beretta U.S.A. Corp.*, 222 F.R.D. 51, 54 (E.D.N.Y.2004). Defendants supported ATF's contentions, but argued, in the alternative, that if the court ordered any production of ATF data, the defendants would be entitled to "full access to and an unfettered right to use" such data. *See id.* (citation omitted). Plaintiff contended that the ATF data were necessary in order to prove its case against the defendants. *See id.*

The Magistrate Judge held that the 2004 Act did not bar the disclosure of the information at issue:

> [T]he 2004 Act does not … prohibit disclosure of the information. Instead, the 2004 Act prohibits the use, by the [ATF], of appropriated funds in making the disclosure of information to the public.

*Id.* at 59. The opinion of the Magistrate Judge was affirmed. *See City of New York v. Beretta U.S.A. Corp.*, 222 F.R.D. 48 (E.D.N.Y.2004). The United States Court of Appeals for the Second Circuit denied ATF's petition for a writ of mandamus seeking to overturn the district court decision. *In re Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 04–3738–op (2d Cir. Aug. 24, 2004).

### F. Objections Based on Consolidated Appropriations Act of 2005

ATF now objects to producing data based upon the Consolidated Appropriations Act of 2005. See the discussion in Part III.B and IV.B, *infra.*

### G. Scope of the May 19, 2004 Order

In granting the City's request for discovery, the Magistrate Judge, by order dated May 19, 2004, described its scope as follows: "The City and the defendants … actions seek that data which was previously produced in *NAACP*, updated through December 31, 2003." 222 F.R.D. at 67.

### H. City Order of Protection

On October 4, 2004, the Magistrate Judge signed a *City* Order of Protection. It provided for protection against disclosure to nonparties of ATF-produced trace data materials. The *City* Order of Protection, modeled after the *NAACP* Order of Protection, made no provision for the production of purchaser information. The *NAACP* Order of Protection, as indicated *supra*, did not cover information about purchasers because purchaser information was considered a nonsensitive element, and was provided to the NAACP by ATF outside of the *NAACP* Order of Protection.

ATF now claims that because purchaser information was not included in the *City* Order of Protection, it need not be provided in the instant case, despite the fact that it was provided in the *NAACP* action. It also argues that information regarding open cases need not be provided, because in both the *NAACP* and the instant action, ATF provided no information regarding open cases, *except* for that produced in accordance with an Order of Protection.

### I. *Omitted Data*

On October 14, 2004, ATF produced data to the City on compact discs. When the City's experts reviewed the material, they concluded that ATF had produced data organized in a different manner than the data produced in *NAACP*. According to the City, two pieces of information produced in *NAACP* were not produced to the City under the May 19 order; in addition, the City contended that thousands of traces were produced in incomplete form.

#### 1. *Trace Data*

The City contends that ATF failed to provide complete trace data for more than 19,000 traces. The non-produced trace data involve open cases and open, or incomplete, traces. An "open case" is one where the underlying law enforcement investigation has not been concluded. An "open trace" signals that a trace has not been completed, but an open trace does not necessarily mean that the underlying law enforcement investigation was not completed. *See* Mar. 30, 2005 Hrg. Tr. at 14–15 (argument of ATF: "[W]hen ATF obtains information about a gun being involved in a criminal investigation ... the ATF begins a process of tracing the gun, finding out how it moved in the stream of commerce, and that can take some time.... So those traces remain open for purposes of ATF databases [only]."). A trace is closed when ATF identifies the first purchaser that is not a federal firearms licensee, or when the trace is interrupted and cannot be continued. A case is closed when the underlying criminal investigation is completed, for example, when a defendant is convicted.

In producing FTS Database material pursuant to the May 19 order, ATF divided it into separate tables: (1) nonconfidential data—consisting of those items that ATF formerly would have released pursuant to FOIA, such as make, serial number, and state of recovery (with confidential elements removed); and (2) confidential data—consisting of confidential elements that would not have been included in a FOIA disclosure. The missing data for approximately 19,000 traces correspond to the nonconfidential data.

#### 2. *Purchaser Information*

According to the City, ATF also failed to provide sufficient information necessary to allow matching of the confidential data and nonconfidential data containing information from an INDIVIDUAL table, by omitting the purchaser indicator (ROLE=P) for every trace in the nonconfidential or "FOIA" data. This omission from the nonconfidential data, according to the City, makes it difficult or impossible to positively identify the purchaser information in the corresponding confidential data.

The City has requested ATF to provide the sequence number of the purchaser in the INDIVIDUAL table. The sequence number indicates the chain of custody of a particular gun, providing the names of each individual who possessed the gun in order of possession. The omitted sequence number, it is claimed, is crucial to a determination of the "Time to Recovery," (referred to by ATF as the "time to crime"), which is allegedly an important indicator of gun trafficking. The City alleges, upon information and belief, that the sequence number of the purchaser in the INDIVIDUAL table was produced in the *NAACP* action.

#### 3. *Trace Data Decode Tables*

Omissions by ATF, according to the City, affect the decoding of relevant information. The FLS database as produced includes no means of determining the file location of particular types of information, or of determining where separate data fields begin and end. The City has indicated that it requires a "codebook" providing: (1) the name of each file; (2) the start column; and (3) a description of the file content. Without this material, the FLS database is difficult if not impossible to use. The six tables sought include: (1) FTS_COUNTRY; (2) FTS_GUNTYPE; (3) FTS_IDENT_TYPE_CD; (4) FTS_MANUF; (5) FTS_RACE; and (6) FTS_STATE_DECODE.

### J. *City's Motion to Compel*

By letter to the Magistrate Judge dated February 15, 2005, the City moved for an

order to compel ATF to produce additional data, arguing that ATF improperly failed to produce three types of data that, according to the City, were demanded in the subpoena: (1) trace data for open cases that were not specified in the *City* Order of Protection; (2) purchaser information; and (3) trace data decode tables, *i.e.* tables that interpret codes for manufacturers, crimes and case completion information that appear in the trace data.

In response to the motion to compel, ATF took the position that none of the material sought by the City could be produced. It contended that the information requested did not fall under the terms of the City's subpoena or the *City* Order of Protection. It also relied on the 2005 Consolidated Appropriations Act, which provides in relevant part that "all such data shall be immune from legal process and shall not be subject to subpoena or discovery. . . ." ATF argued that the 2005 Act, though adopted on December 8, 2004, substantially after the commencement of this litigation and well into discovery, rendered the information sought immune from disclosure. P.L. 108–447, 118 Stat. 2809, 2859 (Dec. 8, 2004).

### K. *Magistrate Judge's February 22, 2005 Decision*

At a conference held on February 22, 2005, the Magistrate Judge rejected ATF's contention. She held:

> What I ordered was the NAACP files updated to . . . 2003. It falls under the old subpoena. It is not subject to the 2005 Appropriations Act. . . . I actually thought what was going to happen was the disk that was given to [counsel for plaintiff] back in the NAACP case was going to be given to everybody with a new disk adding the additional new updated information. . . . I will give you time to produce it, but you need to get that to them . . . . [e]xactly the same material that was provided to the NAACP. . . . This is [a] subpoena you were ordered to provide responses to prior to that act going into effect. And I don't think that that act retroactively relieves of a responsibility

that I ordered you to respond to before the act was dealt with . . . .

> I think my order was pretty clear. The mandate that I thought was going to be followed was issued long before the act. And I don't think the act prohibits you from now complying with that subpoena.

Feb. 22, 2005 Order at 33–34.

### L. *Arguments of the Parties*

ATF appeals from the decision of the Magistrate Judge. It argues that: (1) the Magistrate Judge erred in deciding that according to her May 2004 opinion ATF was required to produce all types of trace data that it produced in the *NAACP* action; and (2) the Consolidated Appropriations Act of 2005 prohibits production of this information.

The City argues that the touchstone for discovery of the FTS database is the fact that the City and the defendants were to be provided with precisely the same data produced to the parties in the *NAACP* action, updated to account for the passage of time. According to the City, the Magistrate Judge intended to allow the City to access trace data in exactly the same form as in *NAACP,* and therefore her February 22, 2005 order— requiring ATF to supplement its production to conform to the production in *NAACP*— was correct.

Defendants contend that the 2005 Act "makes clear that the disclosure of much of the data previously produced in this case was contrary to prior Congressional mandates." They request the return of all ATF data to the ATF and an order preventing the use of such data in the instant litigation. In the alternative, the defendants propose that if plaintiffs' requests are granted, ATF be required to produce all relevant data through the end of 2004. Their fallback position is that due process requires that defendants have full access to and "an unfettered right to use (subject to an appropriate protective order) underlying [ATF] data."

### III. Law

#### A. *Rule 72(a)*

Rule 72(a) of the Federal Rules of Civil Procedure provides for review of a magistrate judge's order:

Within 10 days after being served with a copy of the magistrate judge's order, a party may serve and file objections to the order.... The district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law.

FED.R.CIV.P. 72(a). ATF's appeal was timely.

## B. *Consolidated Appropriations Act of 2005*

### 1. *Act*

ATF and defendants argue that the 2005 Act prohibits the disclosure of the information directed to be produced by the Magistrate Judge. They contend that the 2005 Act should be applied to cases pending at the time of the statute's enactment, particularly the present action since it was intended by Congress to apply to cases then pending in this court. The critical italicized material below was added in 2005 to the 2004 Act. The whole provision reads:

[N]o funds appropriated under this or any other Act with respect to any fiscal year may be used to disclose part or all of the contents of the Firearms Trace System database maintained by the National Trace Center of the Bureau of Alcohol, Tobacco, Firearms, and Explosives or any information required to be kept by licensees pursuant to section 923(g) of title 18, United States Code, or required to be reported pursuant to paragraphs (3) and (7) of such section 923(g), to anyone other than a Federal, State, or local law enforcement agency or a prosecutor solely in connection with and for use in a bona fide criminal investigation or prosecution and then only such information as pertains to the geographic jurisdiction of the law enforcement agency requesting the disclosure and not for use in any civil action or proceeding other than an action or proceeding commenced by the Bureau of Alcohol, Tobacco, Firearms, and Explosives, or a review of such an action or proceeding, to enforce the provisions of chapter 44 of such title, *and all such data shall be immune from*

*legal process and shall not be subject to subpoena or other discovery in any civil action in a State or Federal court* or in any administrative proceeding other than a proceeding commenced by the Bureau of Alcohol, Tobacco, Firearms, and Explosives to enforce the provisions of that chapter, or a review of such an action or proceeding; except that this proviso shall not be construed to prevent the disclosure of statistical information concerning total production, importation, and exportation by each licensed importer (as defined in section 921(a)(9) of such title) and licensed manufacturer (as defined in section 921(a)(10) of such title)....

P.L. 108–447, 118 Stat. 2809, 2859–60 (Dec. 8, 2004) (emphasis added).

### 2. *Legislative History*

At oral argument, ATF took the position, supported by defendants, that the legislative history of the 2005 Act made clear that it was to apply to this case in particular. It relied in part on a portion of a House of Representatives Committee Report:

The Committee is concerned by recent actions in Federal courts in which litigants have tried to nullify the effect of the language that was enacted to ensure the confidentiality of this information. The Committee therefore includes language to make clear that ATF shall not make these law enforcement records available to anyone other than to law enforcement agencies for a bona fide criminal investigation.

H.R. Rep. 108–576 at 30. According to ATF, at the time this report was issued, there were no pending cases, apart from the cases pending in this court, where ATF had been ordered to produce such information.

THE COURT: Is there any information in the legislative history that Congress referred to the decisions in this Court?

MR. SCHACHNER [for ATF]: Well, the legislative history which we quote pretty much all of it in our brief and I can get you a specific number in a moment, the legislative history specifically refers to it.

MR. ORLOW [for ATF]: It refers to recent federal court decisions, Your Honor, and there weren't any others at that time.

MR. SCHACHNER: Recent actions in the federal courts in which litigants have tried to nullify the effect of the language contained in a prior appropriations bill that was enacted in order to ensure confidentiality of this information. That is cited at page 12 of our brief, and as Mr. Orlow has stated, there are no actions other than this action and I guess the related Wendy's action.

THE COURT: But it is an inference on your part that the reference was to the decisions in this Court, the Congress did not signal those cases explicitly; is that correct?

MR. SCHACHNER: Did the Congress give the case name and CV number, no, Your Honor, but there is nothing else that Congress could have referred to. There were no actions ordering disclosures pursuant to which disclosures were ordered in any other district court in any other court of appeals.

Mar. 30, 2005 Hrg. Tr. at 23–24.

### 3. *Retroactivity*

#### a. Generally

■ "[T]he presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than the Republic." *Landgraf v. USI Film Products*, 511 U.S. 244, 265, 114 S.Ct. 1483 (1994). "The presumption is very strong that a statute was not meant to act retrospectively, and it ought never to receive such a construction if it is susceptible of any other." *Carl Marks & Co., Inc. v. Union of Soviet Socialist Republics*, 665 F.Supp. 323, 336 (S.D.N.Y.1987) (citation omitted). The antiretroactivity principle was of such concern to the founders that it was safeguarded in various provisions of the Constitution, including the *Ex Post Facto* Clause, the Fifth Amendment's Takings Clause, prohibitions on Bills of Attainder, and the Due Process Clause's protection of the interests in fair notice and repose.

These provisions demonstrate that retroactive statutes raise particular concerns. The Legislature's unmatched powers allow it to sweep away settled expectations suddenly and without individualized consideration. Its responsivity to political pressures poses a risk that it may be tempted to use retroactive legislation as a means of retribution against unpopular groups or individuals. [It] restricts governmental power by restraining arbitrary and potentially vindictive legislation.

*Landgraf*, 511 U.S. at 266–67, 114 S.Ct. 1483 (internal quotation and citations omitted).

■ A statute does not operate retrospectively simply because it is applied in a case arising from conduct antedating the statute's enactment. Courts instead ask whether the new provision attaches new legal consequences to events completed before its enactment.

The conclusion that a particular rule operates "retroactively" comes at the end of a process of judgement concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event. Any test of retroactivity will leave room for disagreement in hard cases, and is unlikely to classify the enormous variety of legal changes with perfect philosophical clarity. However, retroactivity is a matter on which judges tend to have sound instincts, and familiar considerations of fair notice, reasonable reliance, and settled expectations offer sound guidance.

*Id.* at 270, 114 S.Ct. 1483.

■ Once it is established that a provision attaches new legal consequences to events completed before its enactment, the task is to determine whether Congress has expressly prescribed the statute's proper reach. *See id.* at 280, 114 S.Ct. 1483. If Congress has done so, there is no need to resort to judicial default rules. Where the statute in question unambiguously applies to preenactment conduct, there is no conflict between the antiretroactivity presumption and the principle that a court should apply the law in effect at the time of decision. *See id.* Where the new statute would have a genuinely retroactive effect, *i.e.,* where it would impair rights a party possessed when he or she acted, increase liability for past conduct, or impose new duties with respect to transactions already completed, the tradi-

tional analysis teaches that the statute does not govern absent clear congressional intent favoring such a result. *See id.*

### b. Statutory Interpretation

 " 'Determination of retroactivity [is] a matter of statutory construction.' " *Carl Marks & Co., Inc. v. Union of Soviet Socialist Republics*, 665 F.Supp. 323, 336 (S.D.N.Y. 1987) (citing *Litton Systems, Inc. v. American Telephone & Telegraph Co.*, 746 F.2d 168, 174 (2d Cir.1984)). "Our starting point in statutory interpretation is the statute's plain meaning, if it has one." *United States v. Dauray*, 215 F.3d 257, 260 (2d Cir.2000). In *Dauray*, the United States Court of Appeals for the Second Circuit determined that where Congress had not defined the terms at issue, the court would "consider the ordinary, common-sense meaning of the words." *Id.* "The preeminent canon of statutory interpretation requires us to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there.' " *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183, 124 S.Ct. 1587, 158 L.Ed.2d 338 (2004) (citing *Connecticut Nat. Bank v. Germaine*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)). "Thus, [an] inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *Id.* Only "[w]hen the plain language and canons of statutory interpretation fail to resolve statutory ambiguity [will courts] resort to legislative history." 215 F.3d at 264.

Given the particular use, in this instance, of "shall" and "may," a reading suggests that the provision in question applies "only to actions that have yet to be brought—not to ones that have already been filed." *Salahuddin v. Mead*, 174 F.3d 271, 274 (2d Cir.1999) (citation omitted). In the portion of the statute reaffirming the prior language of the 2004 Consolidated Appropriations Act, it states that "no funds ... *may* be used." 118 Stat. at 2859–60. The language "no funds ... may be used" indicates a present ban on the use of funds for the purpose of disclosing covered information, and has been recognized and upheld in the pending litigation. *See City of New York v. Beretta*, 222 F.R.D. 48 (E.D.N.Y.2004). In referring to the ban on disclosure itself, rather than the prohibition on expending funds for disclosure, the 2005 Act states that covered data "*shall* be immune from legal process and *shall* not be subject to subpoena or any other discovery in any civil action...." 118 Stat. at 2859 (emphasis added).

> There is no doubt that 'shall' is an imperative, but it is equally clear that it is an imperative that speaks to future conduct. Even the most demanding of us cannot reasonably expect that a person "shall" do something yesterday....

*Salahuddin v. Mead*, 174 F.3d 271, 274 (2d Cir.1999).

 In determining the meaning of statutory terms, a court should " 'consider not only the bare meaning of the word but also its placement and purpose in the statutory scheme. The meaning of statutory language, plain or not, depends on context.' " *Id.* at 261 (citing *Bailey v. United States*, 516 U.S. 137, 145, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995)). That Congress employed the term "may" in a portion of the statute just before "shall" provides some indication of context for both terms. Their juxtaposition suggests that Congress designed a present ban on the expenditure of funds for the disclosure of covered information, and a future ban on disclosure *per se.*

 The absence of any language suggesting application to pending cases in the instant case supports a finding of congressional design that the immunity from disclosure be prospective rather than retroactive:

> [The court] will not strain to detect or create an ambiguity in the otherwise plain terms of the provision before us. It is of course possible for Congress to state in even clearer terms that a particular statutory provision is to apply only prospectively, particularly by crafting a subsection to that provision which speaks solely and specifically to the question of timing. The Supreme Court has demonstrated however, that a statute can offer express guidance even without such a targeted subsection. Moreover, in its post-*Landgraf* decisions, the Court has hinted that such a heightened level of clarity, if it is

ever required, is required only to justify the *retroactive* application of a newly enacted provision. By implication, and as demonstrated by [subsequent caselaw], Congress can reveal its intent to apply a provision prospectively in fewer words and without a discrete statutory subsection addressed specifically to that issue. [The court is] therefore satisfied that by limiting the [provision] to [data that "shall be immune,"] Congress has expressly precluded application of that requirement to actions that have already been filed.

*Salahuddin,* 174 F.3d at 275 (emphasis in original). *See also Carl Marks & Co., Inc. v. Union of Soviet Socialist Republics,* 665 F.Supp. at 337 ("The use of 'shall have' indicates prospective application.").

The conclusion that the statute does not apply to pending cases is supported by comparing its language to the language that the Court suggested in *Landgraf* could qualify as a clear statement that a statute was to apply retroactively: "[T]he new provisions shall apply to all proceedings pending on or commenced after the date of enactment." 511 U.S. at 260, 114 S.Ct. 1483. Congress, aware of the availability of such language, as well as the courts' longstanding presumption against retroactivity, chose not to include it.

### c. Non-retroactivity

■ Even absent specific legislative design, application of a new statute to cases arising before its enactment may be proper in many situations. *See Landgraf,* 511 U.S. at 273, 114 S.Ct. 1483. "Changes in procedural rules may often be applied in suits arising before their enactment without raising concerns about retroactivity." *Id.* at 275, 114 S.Ct. 1483. The Court has noted "diminished reliance interests in matters of procedure." *Id.*

Of course, *the mere fact that a new rule is procedural does not mean that it applies to every pending case.* A new rule concerning the filing of complaints would not govern an action in which the complaint had already been properly filed under the old regime, and the promulgation of a new rule of evidence would not require an appellate remand for a new trial.

*Id.* at 275 n. 29, 114 S.Ct. 1483 (emphasis added).

Assuming that the language used by the Legislature were not clearly prospective, and though the question involves a "procedural" or "collateral" discovery matter, the Supreme Court has repeatedly indicated that "the applicability of such provisions ordinarily depends on the posture of the particular case." *Id.*

Attaching the label "collateral" to [particular] questions does not advance the retroactivity inquiry, however. While it may be possible to generalize about types of rules that ordinarily will not raises retroactivity concerns, these generalizations do not end the inquiry. For example, in *Landgraf,* we acknowledged that procedural rules may often be applied to pending suits with no retroactivity problems, but we also cautioned that "the mere fact that a new rule is not procedural does not mean that it applies to every pending case." When determining whether a new statute operates retroactively, it is not enough to attach a label (*e.g.,* "procedural," "collateral") to the statute; we must ask whether the statute operates retroactively.

*Martin v. Hadix,* 527 U.S. 343, 359, 119 S.Ct. 1998, 144 L.Ed.2d 347 (1999).

In *Martin v. Hadix,* the Court held that a statute could not limit attorney fees, labeled as "collateral" in *Landgraf,* for services performed before its effective date, because it would upset the expectations of the parties:

In this case, ... from the beginning of the suits, the parties have proceeded on the assumption that the [previous statute] would apply.... To impose the new standard now, for work performed before the [new statute] became effective, would upset the reasonable expectations of the parties.

*Id.* at 360, 119 S.Ct. 1998. *Cf. In re Enterprise Mortgage Acceptance Co. Sec. Litig.,* 391 F.3d 401, 409 (2d Cir.2005) (declining "plaintiffs' invitation to designate all statutes of limitations 'procedural' and thereby hold that any revised statute of limitations shall have retroactive effect unless Congress has clearly indicated otherwise."); *Vernon v.*

*Cassadaga Valley Cent. Sch. Dist.,* 49 F.3d 886, 892 (2d Cir.1995) ("[D]etermining that a statute of limitations is procedural could facilitate retroactive—and possibly inequitable—application of that statute."); *Sun Oil Co. v. Wortman,* 486 U.S. 717, 727, 108 S.Ct. 2117, 100 L.Ed.2d 743 (1988) (noting that the "words 'substantive' and 'procedural' themselves ... do not have a precise content, even (indeed especially) as their usage has evolved.").

In the instant case, given that the litigation commenced long before the passage of the statute, and that discovery was well underway by the time it was enacted, the application of the statute would upset the reasonable expectations of the parties, who substantially relied on the availability of this information in the way that they and the Magistrate Judge proceeded with the lawsuit. Retroactive application of the 2005 Act would threaten substantial unfairness to the parties and unnecessarily increase the burdens of the litigation on parties and the court.

### IV. Application of Law to Facts

#### A. *Trace Data, Purchaser Information and Data Decode Tables*

■ In the *NAACP* action, ATF turned over both sensitive and nonsensitive information. At that time, the nonsensitive information could have been acquired by any person through the filing of a FOIA request. Sensitive information was provided pursuant to a protective order, designed to ensure the security of the information itself and to promote the aims of law enforcement. To a lay observer—including learned counsel before the court—this highly technical information without the substantial aid of experts appears at times to be nothing more than "gibberish." Mar. 30, 2005 Hrg. Trans. at 50. *See also NAACP v. Acusport Corp.,* 210 F.R.D. 268 (E.D.N.Y.2002). Given the complexity of the materials, the details of individual items sought, as articulated by the City or as interpreted by ATF, may well have been indistinct.

ATF argues that any resulting misunderstanding should work in its favor, entitling it to withhold disclosure of omitted data, data that were provided as nonconfidential information in the *NAACP* action. *See* Mar. 30, 2005 Hrg. Tr. at 5 ("That subpoena was quite clear. It does not request all material produced by ATF in the *NAACP* case. It did not request all trace data produced in the *NAACP* case. It did just the data—trace data that ATF produced pursuant to the protective order in *NAACP.*")

The ATF representatives themselves were unable to expand on the details of the materials withheld because of the difficulty in understanding their significance. *See, e.g.,* Mar. 30, 2005 Trans. at 11–16. The City explained the apparent misconceptions of the parties regarding what information was sought. *See id.* at 32–33. ATF nevertheless seeks to hold the City accountable for failing to perfectly reduce to paper its simple request that everything provided in the *NAACP* action be provided again and updated. As a result, ATF withholds, not the law enforcement sensitive information that was governed by a protective order, but instead the information that was available to the public at large at the time it was provided in the *NAACP* action. ATF urges that the subpoena asked only for information under the *NAACP* Protective Order, and therefore that the information ATF freely provided *outside* the protective order in the same action was not requested.

While the intricacies of computer database elements may lead to some puzzlement, what is clear is that in May of 2004 the Magistrate Judge ordered production of all the information provided in the *NAACP* action. Her intention was not, and could not reasonably have been, for ATF to withhold the nonsensitive information that was provided freely in the *NAACP* action. Such an interpretation of her order strains credulity. Her subsequent order, which forms the basis for this appeal, held that she ordered disclosure of everything discovered in the *NAACP* litigation, and confirms this interpretation. The Magistrate Judge's interpretation of her own orders as effective before the 2005 Act was adopted should be given substantial weight. The appealed decision was not clearly erroneous.

#### B. *Non-application of 2005 Act*

Given the terms of the 2005 Act, there is good reason not to interpret the immunity

provision as having retroactive effect as to the material ordered by the Magistrate Judge to be supplied by ATF. While new procedures can often be applied to pending cases without triggering retroactivity concerns, sometimes, as in the present instance, that approach interferes with a fair litigation process. Where the parties have, for example, as in the present case, conducted complex discovery, to change the rules mid-litigation would deny them information that they reasonably expected to receive in developing trial and discovery strategy. Given the posture of the case, along with familiar considerations of fair notice, reasonable reliance, and settled expectations, the retroactive application of the 2005 Act to the pending discovery dispute in the current litigation would unreasonably disrupt the expectations of the parties and jeopardize the fairness of the proceedings.

No harm to ATF or any law enforcement agency results from the Magistrate Judge's order. The party receiving the information will, in accordance with the 2004 Act, pay for the cost of providing it.

Defendants' request that information already disclosed be returned to ATF and excluded from the instant litigation demonstrates the threat to due process that would be posed by the retroactive application of the 2005 Act. It is defendants' position that, based on the 2005 Act, "no such data can be used in the trial of this case." Such a position is not tenable, given that the litigation has proceeded in reliance on that information and it is now time for trial. ATF's response to this argument by defendants is instructive:

> The language of the 2005 Act . . . makes it clear that Congress was concerned about further disclosures. There is no specific provision in there rolling back the clock—or unscrambling the eggs is, I suspect, a better metaphor—there is no provision to unscramble the egg in this case.

Mar. 30, 2005 Hrg. Trans. at 49.

### V. Conclusion

The City is entitled to the information from ATF ordered by the Magistrate Judge. The 2005 Act does not apply to the issues now raised. The order of the Magistrate Judge is affirmed. The matter is remanded to the Magistrate Judge with discretion to enforce the substance of disclosure orders to ATF.

SO ORDERED.